DECISION
{¶ 1} Relator, Betty Forrest, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that granted the request for reconsideration filed by respondent-employer, Anchor Hocking Consumer Glass, pursuant to R.C. 4123.52, and to issue a new order denying the request or, in the alternative, to issue an order that complies with State ex rel. Nicholls v. Indus. Comm. (1998),81 Ohio St.3d 454.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that the commission's order did not meet the requirements of Nicholls, and that a writ of mandamus should be granted to require the commission to issue an order that meets those requirements. Respondents have filed objections to the magistrate's decision. Relator has not replied to those objections.
 {¶ 3} In their objections, respondents argue that relator has an adequate remedy at law through an appeal pursuant to R.C. 4123.512, and that the commission's order of November 14, 2002 did meet the requirements of Nicholls.
 {¶ 4} In 2001, relator's workers' compensation claim was allowed for a sprained right wrist and a ganglion cyst. Relator later filed a motion requesting her claim be additionally allowed for right wrist TFC tear, based on an MRI report by Dr. Robert Miller and a report of her treating physician, Dr. F. Paul DeGenova. Relator was also examined by Dr. James F. Nappi, who stated that was no TFC tear. The claim for allowance of an additional condition was disallowed by a district hearing officer but, following an appeal by relator, the additional claim was allowed by a staff hearing officer based on a report of Dr. DeGenova.
 {¶ 5} Respondent-employer filed an appeal from the staff hearing officer's order and attached a copy of the August 16, 2002 office notes from Dr. DeGenova, wherein he stated he now agreed with Dr. Nappi and concluded there was no TFC tear. Respondent-employer's appeal from the staff hearing officer's order was refused and respondent-employer filed a request for reconsideration which was granted by the commission in an order that stated, in part:
It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a new and changed circumstances occurring subsequent to the Staff Hearing Officer's order issued 08/22/2002.
Specifically, it is alleged that an office note, which by due diligence could not have been discovered prior to the date of hearing, from the injured worker's treating physician contradicts the earlier report from this physician relied upon by the Staff Hearing Officer to allow the additional condition of right wrist TFC tear.
 {¶ 6} The magistrate correctly concluded that in an appeal, pursuant to R.C. 4123.512, the issues to be addressed by the trial court would be those relating to the presence of a medical condition and whether or not it was a work-related injury, and the trial court would not address and could not correct an improper exercise of jurisdiction by the commission granting reconsideration pursuant to R.C. 4123.52. Thus, the magistrate correctly concluded that an appeal was not an adequate remedy at law. Respondents' objections to this extent are overruled.
 {¶ 7} We disagree with the magistrate, however, that the commission had to identify a change of circumstances arising since the refusal order was issued. Rather, we conclude that the commission properly stated the new and changed circumstances, that is, the August 2002 notes of Dr. DeGenova, that had occurred since the staff hearing officer's hearing and order, and why its refusal was an abuse of discretion. Thus, the reconsideration order met the requirements of Nicholls. Respondents' objections to this issue are sustained.
 {¶ 8} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's findings of fact as its own. This court adopts the magistrate's conclusions of law that an appeal, pursuant to R.C. 4123.512, does not provide relator with an adequate remedy as to the issue of the commission's exercise of continuing jurisdiction. We do not, however, adopt the conclusions of law that the reconsideration order failed to meet the requirements of Nicholls. Therefore, the requested writ of mandamus is denied.
Objections overruled in part and sustained in part, writ of mandamus denied.
PETREE, P.J., and WATSON, J., concur.
 IN MANDAMUS {¶ 9} In this original action, relator, Betty Forrest, asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order granting reconsideration under R.C. 4123.52 and to issue a new order denying the request, or, in the alternative, to issue an order that complies with State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454.
Findings of Fact:
 {¶ 10} 1. In April 2001, Betty Forrest ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed for a sprained right wrist and a ganglion cyst of the wrist.
 {¶ 11} 2. In May 2002, claimant filed a motion requesting that the claim be additionally allowed for "right wrist TFC tear (718.03)."
 {¶ 12} 3. Claimant filed an April 2002 MRI reading from Robert L. Miller, M.D., who reported as follows:
 {¶ 13} "Clinical History: Chronic right wrist pain. Good range of motion. Lump on the anterior surface which is not painful.
 {¶ 14} "* * *
 {¶ 15} "Fluid is seen in the radiocarpal joint. There is about 1 mm of ulnar minus variance involving the distal radius. Bone marrow signal intensity is unremarkable. The posterior and anterior [illegible] ligaments demonstrate normal signal intensity and morphology. There is a focal linear increased signal intensity seen in the radial aspect of the triangular fibrocartilage near the attachment onto the ulnar margin of the distal radius. This is seen on all 3 coronal imaging sets, including the gradient echo, T2, and T1 weighted images. The meniscus homologue demonstrates normal signal intensity and morphology involving the TFC complex. Carpocarpal and trapeziometacarpal articulations are unremarkable.
 {¶ 16} "IMPRESSION:
 {¶ 17} "There is a tear seen involving the triangular fibrocartilage along its radial aspect near its attachment onto the distal radius with associated radioulnar joint effusion."
 {¶ 18} 4. In addition, the following forms signed by F. Paul DeGenova, D.O., were filed: a May 2002 form recommending the addition of "right wrist TFC tear" to the claim; a C-84 form certifying temporary total disability ("TTD") but permitting alternative/light duty work from December 14, 2001, to an estimated return-to-work date of June 30, 2002; and a work-restrictions form prohibiting any repetitive use of the right hand but permitting occasional lifting of up to five pounds.
 {¶ 19} 5. On July 10, 2002, claimant was examined by James F. Nappi, M.D., who reported as follows:
 {¶ 20} "* * * This 25 year old right handed packer for Anchor Hocking * * * had the onset of numbness and tingling in her right hand with repetitive motions while packing on 4-21-01. She describes the onset of pain in her wrist after that time and profound numbness and tingling in her hand. She has been treating with Dr. D[eGenova] since that time. She worked for a period of time with a wrist splint and on light duty but has indeed been off work since 12-3-01. She has had no change in her symptoms since that time. Her current complaints are of flexor forearm pain with radiation to the upper forearm and of a glove like numbness of the hand. She states that her pain and numbness both increase with use and activity. She has had no change in symptoms whatsoever while being off work for the past 7 months.
 {¶ 21} "She has had a negative electrodiagnostic work up as of 7-27-01. She had an MRI of the wrist on 4-19-02 which was essentially normal except for the interpretation of a TFC tear. She states that she indeed had an area of swelling over the flexor mass approximately 3 to 4 cm. proximal to the wrist crease which was interpreted as a ganglion in the past. MRI did not demonstrate any fluid filled cysts in this region.
 {¶ 22} "PHYSICAL EXAMINATION: Normal color, texture and moisture to the skin and fingers. Normal circulatory exam with a negative Allen's test. Glove like anesthesia of both flexor and dorsal aspects of the hand. All areas examined proximal to the wrist crease have an equal amount of tenderness to direct palpation. There is pain most in the flexor aspect of the wrist and forearm with both flexion and extension of the wrist. All provocative signs produce increased numbness in the hand. Patient exhibits a total Tinel syndrome (every area percussed elicits numbness in all fingers, including median nerve at wrist, ulnar nerve at mid-forearm, and lateral epicondyle). There is no palpable flexor or extensor tenosynovitis. The wrist has a normal range of motion with tenderness through all areas of range. There is a negative circumduction exam of the TFC and no specific DRU instability or TFC tenderness greater than any other area.
{¶ 23} "Grip Strength RIGHT LEFT
 1 30 30 2 25 30 3 30 44 4 35 45 Rapid 5 place 50 to 20 40 to 45 Repeat 20 40
 {¶ 24} "Medical Record Review: Dr. D[eGenova] in the past has noted that with a motion study this patient's distal ulna does never convert to a ulnar positive variant. There are numerous different diagnoses that have been entertained throughout the course of this claim.
 {¶ 25} "With specific reference to your questions:
 {¶ 26} "1) The patient's MRI suggests a TFC tear.
 {¶ 27} "Comment: This is a notoriously unreliable examination for making this diagnosis. There is no instability of the distal radial joint or carpus on the TFC region on exam. Henceforth, there is not a Type 1B or 1C TFC tear present. A 1D tear would likewise be precluded by the description of her MR. Whether a traumatic tear (sprain 842.00) or a progressive attrition (Type 2 TFC pathology) exists, cannot be determined by MRI. Prior literature studies would suggest that 50% of individuals by age 40 can have incompetent TFC's from normal wear and tear which can be mis-interpreted as a tear. In the light of the absence of a specific described injury pattern, I see no clinical evidence to support TFC tear. Since MRI is notoriously unreliable for diagnosing tears of the TFC, I certainly would not consider a TFC tear to be present in this patient only because an MRI suggests this.
 {¶ 28} "2) I do not see any specific history which would be compatible with a TFC tear specifically coming about with this patient's history of `injury' of 4-21-01. Her specific related complaints as of that date were the onset of numbness and tingling in the right hand. TFC tears would not create this type of problem. Henceforth, I do not believe there is any indication that a traumatic TFC tear occurred in this individual.
 {¶ 29} "* * *
 {¶ 30} "To reiterate, I see no clinical evidence of TFC pathology in this patient. MRI is entirely non-reliable in making the diagnosis of TFC pathology. This patient does not have a specific history compatible with TFC traumatic injury." (Emphasis sic.)
 {¶ 31} 6. On July 19, 2002, a hearing was held before a district hearing officer, who disallowed the additional condition.
 {¶ 32} 7. On August 20, 2002, a staff hearing officer ("SHO") granted the allowance based on the following explanation:
 {¶ 33} "Based on the reports of Dr. DeGenova, and the MRI read by Dr. Miller (4/19/2002) this claim is now additionally allowed for "RIGHT WRIST TFC TEAR." (This order is referred to herein as "the SHO order.")
 {¶ 34} 8. Dr. DeGenova provided copies of his recent notes, including an office note regarding claimant's visit on August 16, 2002, in which Dr. DeGenova noted as follows:
 {¶ 35} "She returns today regarding her right wrist. She saw Dr. Nappi who does not feel she has a TFC tear. She states her wrist still feels the same. * * * RECOMMENDATION: I spoke with her about different treatment options. I agree with Dr. Nappi's diagnosis and opinion. * * * " (Emphasis added.)
 {¶ 36} 9. On September 6, 2002, the employer appealed. In support of the appeal, the employer filed Dr. DeGenova's office note stating that he agreed with Dr. Nappi's diagnosis and opinion.
 {¶ 37} 10. On September 14, 2002, the commission mailed an order refusing the employer's appeal without comment. (This order is referred to herein as "the refusal order.")
 {¶ 38} 11. On September 30, 2002, the employer filed a request asking the commission to reconsider its refusal order mailed on September 14, 2002. The employer emphasized the importance of the new evidence that the employer obtained after the staff hearing on August 20, 2002, and that supported the appeal:
 {¶ 39} "The new evidence is crucial in that the claimant's doctor, Dr. DeGenova Has Changed His Position In His August 16, 2002 Progress Note And Indicates That He Now Agrees With Dr. Nappi's Diagnosis And Opinion. This is critical in that Dr. Nappi * * * indicated in his diagnosis that the claimant did not have right wrist TFC tear. He also gave an opinion that the MRI is entirely non-reliable in making the diagnosis of TFC pathology and the claimant does not have a specific history compatible with TFC traumatic injury." (Emphasis sic.)
 {¶ 40} The employer further contended that, with Dr. DeGenova's repudiation of his former opinion and his current agreement with Dr. Nappi that there is no TFC tear, and with the lack of any opinion by the MRI reader as to causation, there was absolutely no evidence to support the additional allowance in the claim. The employer further noted that claimant, in opposing the employer's appeal, had merely relied on Dr. DeGenova's initial diagnosis and had ignored the subsequent repudiation in the August 16, 2002 office note.
 {¶ 41} 12. In November 2002, the commission vacated the refusal order and granted a new hearing:
 {¶ 42} "It is the finding of the Industrial Commission that the employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a new and changed circumstances occurring subsequent to the Staff Hearing Officer's order issued 08/22/2002.
 {¶ 43} "Specifically, it is alleged that an office note, which by due diligence could not have been discovered prior to the date of hearing, from the injured worker's treating physician contradicts the earlier report from this physician relied upon by the Staff Hearing Officer to allow the additional condition of right wrist TFC tear.
 {¶ 44} "The order issued 09/14/2002 is hereby vacated.
 {¶ 45} "Based on these findings, the Industrial Commission directs that the employer's request for reconsideration filed 09/30/2002 is to be set for hearing to determine if the alleged new and changed circumstances/newly discovered evidence as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 {¶ 46} "In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issues. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issues."
 {¶ 47} 13. In January 2003, the commission held a hearing and issued an order in which it first found grounds to invoke its continuing jurisdiction and then granted the employer's appeal of the SHO order:
 {¶ 48} "* * * [T]he employer's request for reconsideration, filed 09/30/2002, is granted. The employer's appeal, filed 09/06/2002, is granted and the Staff Hearing Officer order, dated 08/20/2002, is vacated.
 {¶ 49} "The Industrial Commission finds new and changed circumstances occurred subsequent to issuance of the Staff Hearing Officer order, dated 08/20/2002. Specifically, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the employer prior to the date of the Staff Hearing Officer order. The 08/16/2002 office notes of Dr. DeGenova, the injured worker's physician of record, which indicated a change of his opinion and diagnosis, were unavailable for consideration by the Staff Hearing Officer. Therefore, grounds exist for the Commission to reconsider the injured worker's underlying motion for additional allowance.
 {¶ 50} "It is further the finding of the Industrial Commission that, based on the office notes, dated 08/16/2002, Dr. DeGenova agrees with Dr. Nappi that the injured worker does not have a RIGHT WRIST TFC TEAR. Therefore, it is the order of the Industrial Commission that the condition of RIGHT WRIST TFC TEAR is disallowed." (Emphasis sic.)
Conclusions of Law:
 {¶ 51} In this original action in mandamus, claimant challenges two orders: (1) the November 2002 order in which the commission vacated its refusal order of September 2002 and granted a hearing; and (2) the January 2003 order pursuant to that hearing, in which the commission granted the employer's appeal of the SHO order and disallowed an additional condition. Respondents argue, however, that the orders may not be reviewed in mandamus because the claimant had an adequate remedy in the ordinary course of law under R.C. 4123.512. Respondents further argue that, if the court does review the orders in mandamus, it should conclude that the commission properly exercised its jurisdiction under R.C. 4123.52
and the applicable administrative resolutions.
 {¶ 52} First, the magistrate notes with respect to refusal orders that the commission has established guidelines as to when a hearing is warranted on appeal from an SHO order to the commission level. Under Resolution R94-1-6, an appeal from an SHO order is heard where, among other things, there is newly discovered evidence which by due diligence could not have been discovered and filed prior to the SHO hearing.
 {¶ 53} Although refusal orders typically provide only a summary statement with no commentary, a refusal order necessarily represents a finding by the commission that the appeal from the SHO order did not meet any of the criteria in R94-1-6 for the highest level of administrative appeal. Accordingly, in the present action, when the commission issued the refusal order in September 2002, denying a hearing on the employer's appeal, that order necessarily included a finding that the employer's newly discovered evidence failed to meet the criteria in R94-1-6.
 {¶ 54} Second, this case also involves the employer's subsequent request for reconsideration of the refusal order. It is well established under R.C. 4123.52 that the commission has continuing jurisdiction to modify a final order when it determines that the order was based on an error of fact, error of law, fraud, or when new and changed circumstances have arisen. E.g., State ex rel. B C Machine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538. Further, under Commission Resolution R98-1-03, the commission has circumscribed its exercise of continuing jurisdiction, providing that a party may seek reconsideration of only three types of orders, including an order "refusing to hear an appeal from a decision of a staff hearing officer." In the present action, the refusal order mailed on September 14, 2002, was an order as to which reconsideration could be requested.
 {¶ 55} Further, R98-1-03(D)(1) provides that the commission shall consider a request for reconsideration only with respect to a defect or error in "the order from which reconsideration is sought" or with respect to a change in circumstances occurring after the date of "the order from which reconsideration is sought," unless fraud is involved:
 {¶ 56} "(1) A request for reconsideration shall be considered only in the following cases:
 {¶ 57} "(a) New and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought. For example, there exists newly discovered evidence which by due diligence could not have been discovered and filed by the appellant prior to the date of the order from which reconsideration is sought. * * *
 {¶ 58} "(b) There is evidence of fraud in the claim.
 {¶ 59} "(c) There is a clear mistake of fact in the order from which reconsideration is sought.
 {¶ 60} "(d) The order from which reconsideration is sought contains a clear mistake of law of such character that remedial action would clearly follow.
 {¶ 61} "(e) There is an error by the * * * subordinate hearing officer in the order from which reconsideration is sought which renders the order defective." (Emphasis added).
 {¶ 62} Next, the magistrate considers which types of administrative orders may be statutorily appealed to the common pleas court, thus providing an adequate remedy at law and precluding extraordinary relief in mandamus. R.C. 4123.512(A) provides in pertinent part that the "claimant or the employer may appeal an order of the industrial commission * * * in any injury or occupational disease case, other than a decision as to the extent of disability, to the court of common pleas of the county in which the injury was inflicted."
 {¶ 63} The Ohio Supreme Court has made clear that certain administrative orders are appealable to the common pleas court under R.C. 4123.512. When a final order of the commission allows or disallows a condition, and where the commission's continuing jurisdiction on reconsideration is not involved, there is no question that the order is statutorily appealable. See State ex rel. Liposchak v. Indus. Comm. (2000), 90 Ohio St.3d 276, 279; Afrates v. Lorain (1992), 63 Ohio St.3d 22.
 {¶ 64} Second, a nonfinal order that simply sets a matter for further hearing cannot be appealed under R.C. 4123.512. Afrates.
 {¶ 65} Third, administrative decisions determining whether the right to participate is barred or not barred under the limitations period in R.C. 4123.52 are appealable to the common pleas court. State ex rel. Consolidation Coal Co. v. Indus. Comm. (1985), 18 Ohio St.3d 281; State ex rel. Superior's Brand Meats, Inc. v. Indus. Comm. (1992),63 Ohio St.3d 277; State ex rel. Hinds v. Indus. Comm. (1999),84 Ohio St.3d 424. The limitations period in R.C. 4123.52 is not involved, however, in the present action.
 {¶ 66} In addition, the Ohio Supreme Court has held that certain decisions regarding continuing jurisdiction under R.C. 4123.52 can be reviewed in mandamus. Where the underlying administrative order involved disability compensation or medical treatment, there is no question that an exercise of continuing jurisdiction under R.C. 4123.52 can be reviewed in mandamus. See, e.g., State ex rel. Keith v. Indus. Comm. (1991),62 Ohio St.3d 139 (reviewing an order under R.C. 4123.52 that rescinded disability compensation due to alleged fraud); State ex rel. Weimer v. Indus. Comm. (1980), 62 Ohio St.2d 159 (reviewing an order finding overpayment of compensation due to clerical error); State ex rel. Highway Co. v. Indus. Comm. (1980), 70 Ohio App.2d 41 (permitting mandamus review of order that reversed a prior final order regarding treatment); State ex rel. Bd. of Edn. v. Johnston (1979), 58 Ohio St.2d 132 (reviewing an order under R.C. 4123.52 in which the commission declined to modify a compensation award). Indeed, the court has held that even interlocutory orders granting a hearing on reconsideration may be reviewed in mandamus or prohibition where the commission has failed to identify any basis for exercising continuing jurisdiction under R.C. 4123.52 with respect to an application for disability compensation. State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320.
 {¶ 67} In Foster, however, the Ohio Supreme Court did not address a situation in which the commission's order granted a hearing under R.C.4123.52 where the underlying matter was a motion to allow an additional condition. The parties here agree that there is no published opinion from the Supreme Court addressing a situation where an order on reconsideration granted a new hearing as to the allowance of a condition.
 {¶ 68} However, some decisions provide guidance. For example, there are decisions in mandamus addressing administrative attempts to modify the wording of an allowed condition. In State ex rel. Saunders v. Metal Container Corp. (1990), 52 Ohio St.3d 85, the Ohio Supreme Court held that an order pursuant to R.C. 4123.52, modifying the wording of a claim allowance, was not a determination of the claimant's right to participate in the workers' compensation fund because the parties did not dispute claimant's general right to participate for his injury but merely disputed the specific wording of the conditions.Similarly, in State ex rel. Morrow v. Indus. Comm. (1994), 71 Ohio St.3d 236, an employer moved to clarify that several specific diagnoses were not included within the allowance for "acute back strain." The commission granted the motion and ruled that that several conditions were not allowed as part of the back strain. The Supreme Court held that, although claimant's right to participate for the additional conditions was at issue, that issue was "secondary" to "the question of the commission's jurisdiction." Id. at 238. Thus, mandamus was appropriate.
 {¶ 69} The above-cited cases suggest that an administrative order on reconsideration that determines jurisdiction under R.C. 4123.52 to modify a prior final order is reviewable in mandamus even where the underlying question is the allowance of a condition. In the present action, it would appear that the primary or preliminary issue is the commission's jurisdiction under R.C. 4123.52, which may be reviewed in mandamus, and that the question of claimant's right to participate for a new condition is "secondary" to the question of continuing jurisdiction under R.C. 4123.52. In other words, the magistrate concludes that, in the present action, the court in mandamus may review and determine whether the commission's exercise of continuing jurisdiction was proper, while leaving the allowance issue to the common pleas court under R.C. 4123.512.
 {¶ 70} In reaching this conclusion, the magistrate was persuaded by the argument that a remedy must be available in the event of an improper exercise of continuing jurisdiction under R.C. 4123.52 and that, under R.C. 4123.512, the issue would not be cognizable in a statutory appeal to common pleas court. The Supreme Court has stated that, under the right-to-participate language in R.C. 4123.512, the only appealable question is "whether an employee's injury, disease, or death occurred in the course of and arising out of his or her employment." Liposchak, supra, at 279; see, also, State ex rel. Prestige Delivery Sys. v. Indus. Comm., Franklin App. No. 02AP-622, 2003-Ohio-3329. At oral argument in the present case, counsel for respondents and relator agreed that, in a proceeding under R.C. 4123.512, the administrative determination of continuing jurisdiction would not be appealable — that the trial court would address in a trial de novo only those issues relating to the presence of the medical condition and its cause, and could not correct an improper exercise of jurisdiction by the commission in granting reconsideration under R.C. 4123.52. Thus, it appears that there is no adequate remedy at law for an improper exercise of jurisdiction under R.C. 4123.52, and review in mandamus is not barred.
 {¶ 71} Accordingly, in the present action, the commission's order of November 2002, vacating the refusal order pursuant to R.C. 4123.52 and R98-1-03, may be reviewed in mandamus. If that order and hearing were not within the commission's discretion and must be vacated, then the remaining issues regarding the content of the January 2003 order are moot. However, if the commission's order of November 2002 was sufficient to vacate the refusal order and set a hearing, then the January 2003 order may also be reviewed in mandamus to the extent of the commission's decision to invoke continuing jurisdiction under R.C. 4123.52. The latter part of the decision, addressing the merits and disallowing the condition, cannot be reviewed by this court in mandamus but must be addressed by the common pleas court under R.C. 4123.512.
 {¶ 72} Respondents argue that, even if the court can review the commission's exercise of continuing jurisdiction in this mandamus action, it should refrain from addressing the matter at the present time because the statutory appeal in common pleas court is pending and may result in an allowance of the claim, thus mooting claimant's request for relief in mandamus. However, on consideration of this court's recent decision in Prestige Delivery, together with the arguments presented by counsel in the present action, as well as further consideration of the Foster opinion, the magistrate concludes that the court need not dismiss the present action as premature.
 {¶ 73} This conclusion is based partly on the determination, set forth above, that the common pleas court will not review the commission's jurisdictional decisions under R.C. 4123.52. Moreover, the magistrate notes that, in Foster, supra, the claimant was not required to exhaust even his administrative remedies before seeking review in prohibition and mandamus. Because a claimant can seek mandamus relief immediately upon receiving the order granting hearing on reconsideration, without waiting for the hearing to proceed (regardless of the fact that the hearing's result could moot the jurisdictional protest), then it would appear under the Foster rationale that a claimant who does exhaust the administrative remedies should not have fewer rights and should not be obliged to complete an additional remedy under R.C. 4123.512 before pursuing mandamus relief.
 {¶ 74} In other words, the claimant in the present action could have sought mandamus relief immediately after the November 2002 order, regardless of the fact that the hearing's result might have mooted her jurisdictional protest. However, she proceeded with the hearing, and it would appear under the Foster rationale that, since she was not obliged to participate in further administrative proceedings before pursuing mandamus relief, then she is not obliged to participate in further statutory proceedings under R.C. 4123.512 before pursuing mandamus relief. For all these reasons, the magistrate concludes that claimant's action in mandamus need not be dismissed as premature due to the pending action in common pleas court.
 {¶ 75} Having determined that this court may review in mandamus the commission's exercise of continuing jurisdiction under R.C. 4123.52, the magistrate proceeds to the merits of the issues raised by claimant. As stated above, claimant argues that the commission failed to provide an adequate justification in the November 2002 order for exercising jurisdiction under R.C. 4123.52 to vacate the refusal order.
 {¶ 76} The magistrate begins with a review of the employer's appeal from the SHO order pursuant to the August 20, 2002 hearing. In its appeal, the employer explained that Dr. DeGenova, on whom the SHO had relied, examined claimant on August 16, 2002, just days before the SHO hearing. Dr. DeGenova then set forth his findings and conclusions in an office note in which he stated that he "agree[d] with Dr. Nappi's diagnosis and opinion." Because Dr. Nappi had stated emphatically that claimant did not have a TFC tear and had stated unequivocally that an MRI is not reliable in that type of diagnosis, Dr. DeGenova's statement that he agreed with Dr. Nappi presented a crucial evidentiary issue: either Dr. DeGenova had wholly repudiated his former opinions and, therefore, the evidence on which the SHO had relied could not serve as "some evidence," or Dr. DeGenova had created an ambiguity that he might or might not be able to clarify. See, generally, State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649; State ex rel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158. Here, the physician on whom the SHO relied had appeared to repudiate his opinion a few days before the hearing, unbeknownst to the SHO. Thus, the commission's refusal order, failing to accept the matter for hearing on appeal, was an abuse of discretion under the circumstances.
 {¶ 77} In stating this conclusion, however, the magistrate addresses only the question of whether the commission was obliged to grant a hearing on appeal under R94-1-6, not the question of what the resolution should have been pursuant to that hearing. In other words, the magistrate reaches no conclusion as to whether the evidence was actually within the parameters for "newly discovered evidence" on appeal nor whether the evidence required a reversal of the SHO's ruling, which are issues for the commission to address in the first instance.
 {¶ 78} Next, after the refusal order was issued, the employer's request on reconsideration attempted to show that the evidence submitted on appeal had been extremely significant and that it had been within the parameters for newly discovered evidence on appeal. The employer never attempted to show that it had obtained new evidence since the refusal order was issued in September 2002; the employer did not seek to overturn the refusal order on the grounds that new evidence was discovered after the date of the refusal order. Essentially, in its request for reconsideration, the employer tried to convince the commission that the refusal of a hearing on appeal had been a clear mistake. For example, the employer argued that there was "absolutely no reason for the employer's request for further hearing to be denied." Regardless of the terminology used by the employer, it argued that there was a clear mistake in the refusal order because the commission had failed to recognize that the evidence submitted on appeal was clearly crucial to the validity of the SHO order, clearly was not cumulative, and clearly could not have been discovered prior to the SHO hearing.
 {¶ 79} In sum, the issue on appeal (that is, the appeal of the SHO order) was whether the employer had filed new evidence discovered after the SHO hearing that was significant enough to warrant a hearing on the appeal. In contrast, the issue on reconsideration (of the refusal order) was whether the commission had committed a clear mistake in refusing the appeal — whether the commission had made an error of fact and/or law in the refusal order in failing to recognize that the criteria for obtaining a hearing at the last level of appeal had been met. There was simply no additional evidence filed after the refusal order was issued, nor did the employer allege that it was presenting new evidence on reconsideration. The employer argued that it had previously presented new evidence on appeal.
 {¶ 80} Where the commission desires to vacate a refusal order and grant a hearing based on grounds of new and changed circumstances, the commission must identify new and changed circumstances occurring subsequent to the date of the refusal order, under its own requirements in R98-1-03. Similarly, where the commission desires to vacate a refusal order based on grounds of an error in the refusal order, it must also follow its resolution governing reconsideration. Further, the Supreme Court has required that the commission, when exercising continuing jurisdiction, must identify the error or change in circumstances and "reveal, in a meaningful way, why [continuing jurisdiction] was exercised." Foster, supra, at 322.
 {¶ 81} Here, the commission on reconsideration vacated a refusal order based on a probability of new and changed circumstances, but it failed to cite circumstances occurring subsequent to the refusal order. It relied on circumstances that occurred before the refusal order was issued, not after. In this respect, the November 2002 order failed to comply with R98-1-03. No new and changed circumstances occurred after the order from which reconsideration was sought, and, therefore, the commission's reliance on new and changed circumstances on reconsideration was an abuse of discretion.
 {¶ 82} Respondents cannot overcome the fact that the order from which reconsideration was sought was the refusal order of September 2002. First, the language of R98-1-03 permits reconsideration only of certain orders, including an order refusing to hear an appeal from an SHO order. A nonfinal SHO order on appeal from an order of a district hearing officer is not an order listed in R98-1-03 as an order that may be reconsidered, and, therefore, the commission does not permit reconsideration of an SHO order that affirmed, reversed, or vacated an order of a district hearing officer. The commission has plainly stated that it will consider a request for reconsideration based on new and changed circumstances only when the circumstances occurred after the refusal order and accordingly will not consider a request for reconsideration based on new and changed circumstances occurring before the refusal order.
 {¶ 83} Moreover, the employer in its request for reconsideration explicitly requested reconsideration of the September 2002 refusal order: the employer stated unequivocally (and correctly) that it sought reconsideration of the order "dated September 11, 2002 and mailed on September 14, 2002." Thus, according to the explicit language of R98-1-03, and according to the explicit language of the employer's request for reconsideration, the order from which reconsideration was sought was the refusal order of September 2002, not the SHO order of August 2002. Therefore, in order to grant a hearing on reconsideration, the commission was obliged to find an error or defect in the refusal order of September 2002 or new and changed circumstances occurring after the refusal order was issued. It did not do so.
 {¶ 84} Respondents argue, however, that the employer was not actually seeking reconsideration of the refusal order, because that order included no substantive findings or conclusions. Respondents argue that the employer was in reality seeking reconsideration of the SHO order, which was the last substantive order. Accordingly, respondents contend that the commission was not required to find any error in, or a change in circumstances since, the refusal order in order to vacate it under R98-1-03.
 {¶ 85} Although the magistrate recognizes that the SHO's order on the merits did become the final order of the commission upon issuance of the refusal order, the magistrate disagrees that the commission could vacate the refusal order without finding some defect in it or some subsequent event that called its validity into question. First, the magistrate does not agree that the refusal order was devoid of content. Although brief, it represented a finding that the employer's appeal did not meet any of the criteria set forth in Resolution R94-1-6, including an implicit finding that the employer's new evidence did not meet the criteria in R94-1-6. In other words, the refusal order constituted a determination that could be wrong and was subject to reconsideration.
 {¶ 86} Second, the magistrate cannot ignore the plain language of the request for reconsideration and R98-1-03, both of which stated unequivocally that the order from which reconsideration was sought was the refusal order. R98-1-03 authorizes reconsideration of refusal orders but does not authorize reconsideration of the underlying SHO order. Further, R98-1-03 sets forth specific grounds for reconsideration, including the existence of new and changed circumstances arising after the order from which reconsideration is sought. The resolution does not permit the commission to give reconsideration on the basis of new and changed circumstances arising before the refusal order from which reconsideration is sought. Here, the employer filed no new evidence with its request for reconsideration, and the request was obviously based on a contention that the refusal order on appeal had been a clear mistake.
 {¶ 87} The magistrate acknowledges that, in its request for reconsideration, the employer focused on the new evidence discovered after the SHO hearing and focused on how that evidence had provided strong support for an appeal. However, the employer was attempting to show that the appeal was wrongfully refused, and it never alleged on reconsideration that there were new and changed circumstances arising after the refusal order from which reconsideration was sought. Essentially, the employer argued that it was gross error to have refused its appeal because it had been so clear on appeal that the employer had met the criteria for new and changed circumstances on appeal. Consequently, the magistrate rejects the argument that the employer failed to allege any grounds on which reconsideration could have been granted. Cf. State ex rel. Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97.
 {¶ 88} In summary, the magistrate concludes that, when the commission vacated the refusal order, the commission failed to cite any of the grounds set forth in R98-1-03 and failed to provide an adequate explanation of its grounds for exercising continuing jurisdiction. The commission's order relied on new and changed circumstances, but the record shows no new and changed circumstances that occurred after the order from which reconsideration was sought, contrary to the requirements of R98-1-03.
 {¶ 89} If the commission believed that the refusal order must be vacated because there was a probability of clear mistake or an error that rendered the refusal order defective, it could have said so. R98-1-03 provides such grounds for reconsideration. However, in granting reconsideration based on new and changed circumstances that occurred after the SHO order rather than after the order from which reconsideration was sought, it failed to act within its own stated requirements, and it failed to explain what reason it had, if any, for disregarding its guidelines in this instance. See, generally, Nicholls, supra, at 458 (finding that the commission abused its discretion in failing to follow its own resolution).
 {¶ 90} The magistrate does not address whether the commission could lawfully revise its resolution to permit a broader scope of reconsideration. The magistrate concludes only that the commission abused its discretion by issuing an order on reconsideration that did not comply with its own stated requirements for reconsideration and by failing to provide an adequate explanation of why it was invoking its continuing jurisdiction to vacate a final order. If the commission had a reasonable justification for not following its own guidelines under the circumstances, it could have explained its departure from the norm, but it did not.
 {¶ 91} Therefore, the order of November 2002 constituted an abuse of discretion. The commission vacated a final order without finding a defect in that order or finding new circumstances since that order. Although the extensive decision in January 2003 provides an overall explanation, Foster indicates that the explanation must be present on the face of the order in which the commission grants the hearing. Accordingly, because the November 2002 order failed to identify sufficient grounds for vacating the refusal order, the magistrate believes that a limited writ is warranted. A full writ as in Royal, supra, is not appropriate because claimant has not established that there are no grounds on which the commission could properly have exercised its continuing jurisdiction on reconsideration.
 {¶ 92} Accordingly, because the commission failed to cite sufficient grounds in the November 2002 order for vacating its final refusal order and setting a hearing, the magistrate recommends that the court issue a limited writ returning this matter to the commission and directing it to vacate the orders of November 2002 and January 2003, to issue a new order ruling on the employer's request for reconsideration, and, if the commission decides to vacate the refusal order and grant a hearing, to comply with the requirements for reconsideration stated in its resolution and to reveal in a meaningful way why continuing jurisdiction is being exercised.