THE STATE, EX REL. MARSHALL, APPELLEE, *v.* KELLER, ADMR.,
BUREAU OF WORKMEN'S COMPENSATION, ET AL., APPELLANTS.

[Cite as State, ex rel. Marshall, v. Keller, Admr.,
15 Ohio St. 2d 203.]

(No. 68-81—Decided July 17, 1968.)

204

*Mr. Gus Tarian*, for appellee.

*Mr. William B. Saxbe*, attorney general, *Mr. Walter J. Howdyshell* and *Mr. William M. Culbert*, for appellants.

*Per Curiam.* The question raised by this case is whether mandamus lies to review the order of the Industrial Commission denying compensation for alleged permanent disability caused by silicosis.

Section 4123.68(W), Revised Code (now Section 4123.68 [X], Revised Code), which governs the disposition of workmen's compensation claims for disability or death caused by silicosis, provides in part:

"Before awarding compensation for disability or death due to silicosis, the commission shall refer the claim *to a qualified medical specialist for examination and recommendation with regard to the diagnosis, the extent of disability, the cause of death, and other medical questions connected with the claim. * * *"* (Emphasis added.)

The mandatory provisions of this statute were complied with in this case, the commission having acted pursuant to the opinion and recommendation of its duly appointed medical specialist in denying relator's claim. By its action, the commission resolved a medical question of fact against the claimant, in the face of several expert medical opinions to the contrary presented to it by the claimant. From that action of the commission no appeal is allowed. *Szekely* v. *Young*, 174 Ohio St. 213; Section 4123.519, Revised Code.

Realizing that the existence and degree of disablement caused by silicosis is a question of medical fact, the Gen-

eral Assembly has made it mandatory, through Section 4123.68(W), Revised Code, that the Industrial Commission refer such claims to a qualified medical specialist. If that expert makes a recommendation adverse to the claimant and the commission acts upon that recommendation, neither this court, nor any other court, stands as a tribunal to review that determination by way of an action in mandamus.

What appellee is now seeking through this action in mandamus is to compel the courts of this state to act as a jury and to review and weigh medical evidence. Mandamus is not a substitute for appeal, nor can it be used to create an appeal in cases where an appeal is not provided by law. Before a writ may issue there must be a clear legal duty on respondent to act, and, where the evidence is conflicting, a court cannot substitute its judgment for that of the commission and find that the commission abused its discretion.

In *State, ex rel. Bevis,* v. *Coffinberry,* 151 Ohio St. 293, this court was confronted with a situation nearly identical to that in the present case. In the course of the opinion, Judge Edward S. Matthias stated:

"The question presented to this court by the facts alleged in the petition involves the determination of a purely medical question of fact. The determination of such a question as the relator presents here, that is whether the complicating diseases of pulmonary emphysema and asthmatic bronchitis were caused by the silicosis condition, is so clearly a question of fact that the granting of a writ by this court would be in effect a requirement that the Industrial Commission determine a question of fact in the manner in which this court believes it should have been found and determined. It is clear that there was a positive difference of opinion between the medical authorities constituting the silicosis referees and the medical board of review of the Industrial Commission on the one hand and the physicians who examined the relator on the other. In such a situation the relator obviously does not show a clear right to relief by way of mandamus and under the well established rule such a writ will not issue."

Thus, an action in mandamus ordinarily does not lie to

review the decision of the Industrial Commission denying compensation for an occupational disease.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL and BROWN, JJ., concur.

HERBERT and SCHNEIDER, JJ., dissent.

HERBERT, J., dissenting. The basic question presented in the case at bar is whether the Court of Appeals committed error when it allowed a writ of mandamus to issue commanding the Industrial Commission to perform a duty enjoined upon it by law, *i. e.*, to award compensation to appellee Marshall by reason of an occupational disease, silicosis, contracted by him as a result of his employment.

The majority of this court bases its reversal of the judgment of the Court of Appeals upon two assumptions: (1) There is no appeal to the courts from a decision of the Industrial Commission, in occupational disease cases and (2) mandamus does not lie as a substitute for a law appeal.

How there can be a substitute for an appeal that does not exist will be discussed later.

The majority relies upon the case of *Szekely* v. *Young,* 174 Ohio St. 213, for support of the conclusion reached in assumption No. (1), *supra.* The third paragraph of the syllabus of that case reads:

"There is no right of appeal to the Common Pleas Court with respect to an occupational disease claim under the workmen's compensation statutes."

I submit that neither the General Assembly nor the adopters of our state Constitution intended to close the doors of the courts to an appeal of an adverse decision by a workman, suffering from a "disability" arising from an "occupational disease." A difficult task confronted the General Assembly when it decided to enact a workmen's compensation law pursuant to Section 35, Article II, of the state Constitution, which reads, in part:

"For the purpose of providing compensation to work-

men and their dependents, for death, injuries or *occupational disease*, occasioned in the course of such workmen's employment * * *." (Emphasis added.)

It is difficult to rationalize that the adopters of the Constitution of Ohio would confer the right of appeal to the courts in the case of an "injury" but deny the same right to a workman suffering from an "occupational disease," when the Constitution assures compensation to victims of such disability.

Section 16, Article I of our state Constitution, provides that:

"*All courts shall be open, and every person, for an injury done him* in his land, goods, *person*, or reputation, shall *have remedy by due course of law*, and shall have justice administered without denial or delay. * * *" (Emphasis added.)

Yet, the majority denies an appeal to the "courts" by workmen suffering from an "occupational disease" to correct an injustice done by a decision of the Industrial Commission, no matter how grievous or arbitrary such injustice may have been.

The General Assembly endeavored to confer equal rights to "injury" and "occupational disease" claims.

Section 4123.69 of the Revised Code, reads, in part:

"Every employee mentioned in Section 4123.68 of the Revised Code [occupational diseases] * * * *shall be entitled to all the rights, benefits* * * * and regulations provided for *injured* employees * * * by Sections 4123.01 to 4123.94, inclusive, of the Revised Code.

"The Industrial Commission *shall* have all the powers, authority, and *duties* with respect to the collection, administration, *and disbursement of the State Occupational Disease Fund* as are provided for in Sections 4123.01 to 4123.94, inclusive, of the Revised Code, providing for collection, administration, and disbursement of the State Insurance Fund for the compensation of *injured employees*." (Emphasis added.)

The General Assembly obviously stated its intention and purpose with clarity and precision. Victims of each type of disability—injury or occupational disease—were

entitled to the same rights. Appeal certainly is a matter of right.

*State, ex rel. Indus. Comm.,* v. *Holt,* 134 Ohio St. 25, is in direct conflict with *Szekely.* *Holt* is still the law of Ohio, unreversed, unmodified and unchanged. *Szekely* occupies the same untouched status, as does *State, ex rel. Bevis,* v. *Coffinberry,* 151 Ohio St. 293, in the third paragraph of the syllabus. Just which is controlling presents a difficult question to the bench and bar of Ohio. Be that as it may, in *Holt,* this court held that a denial of a claim of occupational disease was subject to appeal. The court, in a *per curiam* opinion said, at page 27:

"The basic question presented in this proceeding is whether the Court of Common Pleas has jurisdiction on appeal in view of the provisions of Section 1465-68*b*, General Code [Section 4123.69 of the Revised Code]." The claimant in *Holt* sought an appeal to the Court of Common Pleas from a decision of the Industrial Commission. So determined was the Industrial Commission to deny his right of appeal that it instituted a separate action in the Supreme Court seeking a writ of prohibition to deny jurisdiction to the Court of Common Pleas to entertain the appeal. *A writ of prohibition was denied and the jurisdiction of the Court of Common Pleas to entertain the appeal was recognized.* Judges Edward S. Matthias and Gorman dissented, saying:

"The record shows that this was a claim for occupational disease and under Section 1465-68*b*, General Code [now Section 4123.69 of the Revised Code], no appeal is provided when such a claim is denied by the Industrial Commission."

It should be pointed out here that, after *Coffinberry,* the General Assembly amended Section 4123.69 of the Revised Code (formerly Section 1465-68*b* of the General Code), and provided in plain and simple language that the *rights* of victims in injury cases and in occupational disease cases are the same, *i. e.,* that in either case appeal is a matter of right.

Judge Edward S. Matthias delivered the opinion of the court in *Coffinberry.* His opinion distinguishes *Coffin-*

*berry* from the case at bar as well as from *Holt*. *Coffinberry* was decided on *demurrer*. Judge Matthias pointed out in *Coffinberry* that:

"* * * It is clear that there was a *positive* difference of opinion between medical authorities constituting the silicosis referees and the medical board of review of the Industrial Commission on the one hand and the physicians who examined the relator on the other. * * *"

Had testimony been taken there would have been a direct conflict between two groups of equally eminent authorities. In the case at bar this was not the situation, as will be demonstrated later after we dispose of assumption No. 2 of the majority opinion. However, we should quote further from the *Coffinberry* opinion, where Judge Edward S. Matthias said:

"* * * Arbitrary, unreasonable and unlawful orders of the Industrial Commission *may properly be attacked by an action in mandamus but no relief may be granted unless the relator shows gross abuse of discretion of the commission.*" I do not agree that such high degree of proof is required. Preponderance or clear and convincing evidence is sufficient.

That is precisely the case at bar. The Court of Appeals in the instant case found on the evidence that it had before it that there was an *abuse of discretion* by the respondent Industrial Commission.

Assumption No. 2 of the majority opinion denies the right of Marshall to an action in mandamus to compel the Industrial Commission to perform its duty. The majority takes the position that mandamus may not be a substitute for an appeal, but fails to explain how there can be a substitute for something that does not exist. Apparently the majority has confused the well-established and long-settled rule that where there is a remedy in the ordinary course of the law, relief by recourse to an extraordinary writ is not available and must be denied. There is no remedy in the ordinary course of the law for the claimant in the instant case, hence, his only recourse was in mandamus, as Judge Edward S. Matthias points out in *Coffinberry*.

In brief, a plaintiff who has a remedy in the ordinary

course of the law must follow that procedure and must pursue the appeal provided. He cannot avoid this procedure by resorting to an action in mandamus as a substitute for an action at law and an appeal in due course. *State, ex rel. Pressley,* v. *Indus. Comm.,* 11 Ohio St. 2d 141; *State, ex rel. Shively,* v. *Nicholas,* 151 Ohio St.. 179; and *State, ex rel. Sibarco Corp.,* v. *Berea,* 7 Ohio St. 2d 85.

The claimant Marshall exercised an absolute right conferred upon him by the Ohio Constitution, when he invoked the original jurisdiction of the Court of Appeals in his action in mandamus. Section 6 of Article IV of the Constitution of Ohio provides, in part, that:

"The Courts of Appeals shall have original jurisdiction in * * * mandamus * * *."

The last sentence of Section 2 of Article IV of the Constitution reads as follows:

"No law shall be passed *or rule made* whereby any person shall be prevented from invoking the original jurisdiction of the Supreme Court * * *." (Emphasis added.)

The Constitution confers the same original jurisdiction upon both the Supreme Court and the Courts of Appeals. Paragraph two of the syllabus in *State, ex rel. Pressley,* v. *Indus. Comm., supra,* reads:

"When a petition in mandamus, which states a proper cause of action in mandamus, is filed in the Supreme Court *or in the Court of Appeals,* such courts *are required to exercise their original jurisdiction in mandamus,* which is conferred upon those courts by Sections 2 and 6, respectively, of Article IV of the Ohio Constitution. (*State, ex rel. Toledo,* v. *Lynch, Aud.,* 87 Ohio St. 444, and *State, ex rel. Selected Properties, Inc.,* v. *Gottfried,* 163 Ohio St. 469. approved and followed.)"

It is hardly necessary to point out that Chapter 4123, Workmen's Compensation, Revised Code, enjoins upon the Industrial Commission the duty to award and disburse proper compensation in both injury and occupational disease cases. Section 4123.68 of the Revised Code is an example:

"Every employee who is disabled because of the con-

traction of an occupational disease as defined in this section * * * is entitled to the compensation provided by Sections 4123.55 to 4123.59, inclusive, and Section 4123.66 of the Revised Code * * *.''

In respect to the mention of a medical specialist in the majority opinion, the statute, Section 4123.68(W), Revised Code, provides in part:

''Before awarding compensation for disability or death due to silicosis, the commission shall refer the claim to a qualified medical specialist *for examination and recommendation* with regard to the diagnosis * * *.'' (Emphasis added.)

Such specialist did not appear in any hearing. He was not subject to cross-examination. There is no means provided for a claimant to test credibility. His report is given no preference whatsoever over any other report of any specialist that comes to the attention of the Industrial Commission. The Industrial Commission had a report from only one medical specialist and after examining the claimant on July 31, 1963, this is his first report to the Industrial Commission:

''*No previous X-rays* were available for comparison. There is no *definite* evidence of silicosis in the chest X-ray.

''Spirometry * * *

''From the above, pulmonary function is not normal.

''It is my opinion that claimant does not have silicosis.'' (Emphasis added.)

On August 19, 1964, this medical specialist continued:

''Since I do not see definite nodulation in the chest X-rays, *I am unable to make a diagnosis of silicosis.* I believe his symptoms may be partially due to his being overweight, and to his hypertension.

''*Three other physicians are of the opinion that the claimant has disabling silicosis. A lung biopsy may be advisable in order to definitely establish a diagnosis in this case.*'' (Emphasis added.)

The commission's own medical specialist indicates doubt in his report. The examiner appointed by the commission did not have the advantage of previous X-rays.

The following are excerpts from the reports of other

medical specialists in respect to claimant's condition:

Dr. Hardin, on April 29, 1963, reported:

"I have seen this man and followed him with X-rays and treatments since September 1956. He gives a history of having worked in a pottery, under fairly *extreme* conditions of silica dust, for thirty one years * * *.

" * * *

"During the period of time I have been seeing him and getting X-rays he has shown *progressive fibrosis of the lungs,* this is compatible with silicosis. * * *

"In my opinion, I feel that this man has silicosis and *secondary to this has emphysema,* fairly marked, and *marked interstitial fibrosis of both lungs.* I feel he is permanently and totally disabled, because of this condition."

Dr. Rubin examined claimant on December 2, 1963, and reported to the Industrial Commission:

"* * * Fluoroscopy and X-ray revealed *increased* bronchopulmonary markings thruout, especially in bases. *Nodulation* consistent with silicosis disease seen, chest appeared typically that of emphysema and root shadows *increased* in size and density. * * *

"I have no doubt that *Mr. Marshall is suffering from silicosis, and bronchitis, and emphysema* * * *. It is my opinion that the silicosis, *with resulting bronchitis and emphysema* is the cause of his disability and that he is permanently and totally disabled." (Emphasis added.)

Dr. Arnold examined Marshall on December 5, 1963, and reported:

"*Mr. Marshall is totally and permanently disabled with emphysema and silicosis.* He also has hypertension. The X-ray does not show marked evidence of silicosis, however, in my opinion, there is enough evidence to cause the disabling emphysema." (Emphasis added.)

Dr. Kasserman examined Marshall on December 10, 1964, and reported:

"A chest X-ray taken during the course of this examination demonstrated *increased* bronchovascular markings throughout both lungs. There was a fine nodulation throughout both lung fields. There was some degree of

flattening of both diaphragms, the heart shadow was not remarkable.

"In view of the findings of my examination, as well as a review of the previous examinations, leads me to the opinion that *Mr. Marshall does have silicosis* and the accompanying fibrosis and emphysema have produced a disability, which is total and permanent." (Emphasis added.)

The regional board of review, upon the evidence submitted, found that Marshall had contracted silicosis by reason of his employment and awarded compensation to him.

The majority of this court did not pass upon or construe the evidence. It held that the claimant had no appeal from the decision of the Industrial Commission, and furthermore that he could not invoke the original jurisdiction of the Court of Appeals to bring an action in mandamus to compel the Industrial Commission to perform its duty. The holding of the majority is that the decision of the Industrial Commission in cases involving alleged occupational diseases is final from which the victim has no escape. A disturbing feature is that the majority announces a rule that a decision of the Industrial Commission, even though corrupt, may not be disturbed by the courts.

The Court of Appeals, in my opinion, proceeded according to the mandates of our state Constitution. It heard the evidence and concluded that the Industrial Commission's order or decision was an abuse of discretion and corrected the injustice by issuing a writ in mandamus.

The only evidence in support of the Industrial Commission's decision was from one medical specialist who expressed a doubt about his own conclusions. As opposed to that there were four recognized medical specialists who positively and affirmatively, after long periods of observation and examination, concluded that the claimant was suffering from silicosis and other resultant pulmonary diseases by reason of 31 years exposure to silica dust in his employment.

Section 4123.95 of the Revised Code, provides that:

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code *shall be liberally construed in favor of employees*

and the dependents of deceased employees.'' (Emphasis added.)

The decision of the Industrial Commission failed to heed that admonition of the law.

The judgment of the Court of Appeals should be affirmed.

SCHNEIDER, J., concurs in the foregoing dissenting opinion.