ANDERS et al., Appellants,

v.

POWERTRAIN DIVISION, GENERAL MOTORS CORPORATION et al., Appellees.

(31 cases.)

[Cite as *Anders v. Powertrain Div., Gen. Motors Corp.,*
157 Ohio App.3d 815, 2004-Ohio-2469.]

Court of Appeals of Ohio,
Third District, Defiance County.

Nos. 4–03–16, 4–03–17, 4–03–18, 4–03–19, 4–03–20, 4–03–21, 4–03–22, 4–03–23, 4–03–24, 4–03–25, 4–03–26, 4–03–27, 4–03–28, 4–03–29, 4–03–30, 4–03–31, 4–03–32, 4–03–33, 4–03–34, 4–03–35, 4–03–36, 4–03–37, 4–03–38, 4–03–39, 4–03–40, 4–03–41, 4–03–42, 4–03–43, 4–03–44, 4–03–45, 4–03–46, and 4–03–47.

Decided May 17, 2004.

Thomas M. Wilson and Brian P. Wyman, for appellants.

John F. Wetli and Gregory B. Denny, for appellees Powertrain Division, General Motors Corporation.

Jim Petro, Attorney General, and Michael A. Vanderhorst, Assistant Attorney General, for appellee Administrator, Ohio Bureau of Workers' Compensation.

---

SHAW, Presiding Judge.

{¶ 1} These consolidated appeals arise from 32 judgments issued on September 11, 2003, by the Common Pleas Court of Defiance County, Ohio, granting summary judgment in favor of the appellees, Powertrain Division of General Motors Corporation ("Powertrain")[1] and James Conrad, Administrator of the Bureau of Workers' Compensation ("BWC").

{¶ 2} The facts relevant to these appeals are as follows. Plaintiffs-appellants Jimmie Anders, Pascual Barajas, Glenn Bauer, Harold Becker, Robert Bell, Michael Betts, Richard Bidlack, Henry Brown, Benjamin Carter, Willie Coleman, William Dickerson, Danny Dotson, John Ganger, Troy Grant, Norman Johnson, Alva Lewis, Michael Loukos, Frederick March, Joseph Miles, Arnold Morris,

---

1. We note that case No. 4-03-26, involving plaintiff–appellant Robert Coressel, lists Johns–Manville International, Inc., as the defendant–appellee rather than Powertrain. Nevertheless, all issues in that case mirror those against Powertrain. Thus, we elect to refer to these defendants-appellees collectively as "Powertrain."

Ernest Nelson, John Niese, Justo Resendez, Charlie Smith, Timothy White, and Jesse Coronado are all former employees of Powertrain. Plaintiff-appellant Robert Coressel is a former employee of Johns–Manville International, Inc., and the remaining Plaintiffs-appellants, Paul Curtis, William Houck, Sidney Johnson, Ora Page, and Dale Riebesehl, were all employed by Powertrain at the time that this action was instituted.

{¶ 3} Sometime from 2001 to 2002, each individual appellant filed a claim with the BWC, alleging that he had contracted asbestosis while in the employ of Powertrain as a result of asbestos exposure at Powertrain's Defiance plant. These claims were later submitted to an Industrial Commission district hearing officer ("DHO") and scheduled for hearings on each case. Each claimant received notice of the hearings. Prior to the hearings, their attorney, Brian Wyman, sent a letter to the commission DHO in each case, informing the DHO that each had previously filed a narrative "B–Reader" report as required and stating that the appellants were in the "process of obtaining additional medical information in order to facilitate the referral of these matters to a BWC medical specialist pursuant to Industrial Commission Resolution R96–1–01." In addition, these letters stated that neither the appellants nor their counsel would appear at these hearings. However, no requests for continuances in these cases were made.

{¶ 4} On the respective dates of their hearings, neither Mr. Wyman nor any of the appellants appeared. In addition, the other two documents required by Resolution R96–1–01, (1) pulmonary functions studies and interpretation by a licensed physician and (2) an opinion of causal relationship by a licensed physician, in order for the appellants to obtain a referral to a qualified medical specialist from the administrator were not presented. Due to the appellants' noncompliance with the resolution and the resulting lack of medical evidence, the DHO denied the claims of each appellant. The appellants then appealed their cases to a commission staff hearing officer ("SHO"). Each case was set for a hearing, and the appellants were notified of these dates. Once again, they each sent letters similar to the ones sent to the DHO through Mr. Wyman, failed to appear at their SHO hearings, and failed to submit any documents other than the B–Reader reports. Their claims were again denied, and they appealed to the Industrial Commission. However, the commission declined to hear these appeals at that level of the administrative process, pursuant to its authority under R.C. 4123.511(E), and each appealed to the Common Pleas Court of Defiance County, Ohio.

{¶ 5} In the common pleas court action, Powertrain filed a motion for summary judgment in each case based upon the appellants' failure to comply with the requirements of the Revised Code and the Industrial Commission. Specifically,

Powertrain alleged that each appellant failed to submit the required documents to the commission in order to obtain a referral from the administrator to a qualified medical specialist for examination as mandated by the Revised Code, thus preventing their participation in the Workers' Compensation Fund. In response, the appellants, while not disputing the facts, asserted that the proceedings before the common pleas court were de novo and that they were not prohibited from participating in the fund due to what occurred during the administrative process. The trial court disagreed with the appellants and granted summary judgment in favor of Powertrain and the administrator of the BWC. This appeal followed, and the appellants now assert three assignments of error:

{¶ 6} The trial court erred as a matter of law when it granted defendant General Motors' motion for summary judgment based upon a finding that plaintiff failed to exhaust administrative remedies.

{¶ 7} The trial court erred as a matter of law in this workers' compensation matter when it granted defendant employer's motion for summary judgment based upon a finding that a plaintiff employee cannot appeal to the court of common pleas from a denial of the claim by the Industrial Commission of Ohio without first submitting to a state specialist examination, even though there is no other remedy available.

{¶ 8} The trial court erred as a matter of law when it granted defendant employer's motion for summary judgment based solely upon a finding that plaintiffs employees did not attend an examination by a state medical specialist even though no such exam was scheduled by the state.

{¶ 9} As these assignments of error all involve whether the trial court erred in granting summary judgment, they will be addressed together.

{¶ 10} The standard for review of a grant of summary judgment is one of de novo review. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.

{¶ 11} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits." Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526

N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the nonmoving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.

{¶ 12} In the case sub judice, the parties do not dispute the relevant facts. Their controversy concerns the application of the Revised Code regarding the referral of the appellants to a qualified medical specialist by the administrator and whether they are barred from participating in the Workers' Compensation Fund because no such referral was ever made. Thus, this court need only determine the legal issues as to whether Powertrain and the BWC were entitled to judgment as a matter of law.

{¶ 13} The Ohio Constitution provides:

{¶ 14} For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * * Laws may be passed establishing a board which may be empowered to classify all occupations * * * and to collect, administer and distribute such fund, and to determine all right of claimants thereto.

{¶ 15} Section 35, Article II, Ohio Constitution. Pursuant to this provision, the General Assembly created the Industrial Commission, R.C. 4121.02, and the Bureau of Workers' Compensation, R.C. 4121.121, and provided specific authority to each regarding the processing of claims and awarding of compensation to employees injured in the workplace. Included in its ambit of powers, the Industrial Commission was made "responsible for all of the following: (1) Establishing the overall adjudicatory policy and management of the commission under this chapter [4121.] and Chapters 4123., and 4131. of the Revised Code," by the General Assembly. R.C. 4121.03(E)(1).

{¶ 16} R.C. Chapter 4123 provides a comprehensive scheme for workers' compensation. This scheme provides coverage for injuries, as well as occupational diseases. See R.C. 4123.68. The administrative process for workers' compensation claims begins by the filing of a claim with the BWC, which then investigates the matter and determines whether the claimant is entitled to compensation. R.C. 4123.511(A) and (B). This determination is then appealable by either the claimant or employee. R.C. 4123.511(B)(1). If either elects to appeal

the order of the BWC, this appeal is presented to an Industrial Commission district hearing officer, who must then hold a hearing to determine whether the claim is compensable. R.C. 4123.511(B)(3), (C). Once again, either party may appeal the decision of the DHO to a commission staff hearing officer, who is also required to conduct a hearing in order to determine the compensability of the claim. R.C. 4123.511(C) and(D). If not satisfied with the SHO's decision, either party may appeal to the commission, which then determines whether it will hear the appeal. R.C. 4123.511(E).

{¶ 17} The Revised Code further allows either a claimant or the employer to "appeal an order of the industrial commission made under division (E) of section 4123.511 of the Revised Code in any injury or occupational disease case, other than a decision as to the extent of disability, to the court of common pleas of the county in which the injury was inflicted." R.C. 4123.512(A). At this stage, "[t]he administrator, the claimant, and the employer shall be parties to the appeal * * *." R.C. 4123.512(B).

{¶ 18} Based upon R.C. 4123.512, the Ohio Supreme Court has held that a common pleas court is only permitted to determine whether the claimant has a right to participate or to continue to participate in the Workers' Compensation Fund. *State ex rel. Liposchak v. Indus. Comm.* (2000), 90 Ohio St.3d 276, 279, 737 N.E.2d 519. More specifically, "[t]he only right-to-participate question that is appealable is whether an employee's injury, disease, or death occurred in the course of and arising out of his or her employment." Id., citing *Felty v. AT&T Technologies, Inc.* (1992), 65 Ohio St.3d 234, 602 N.E.2d 1141, paragraph two of the syllabus; *Afrates v. Lorain* (1992), 63 Ohio St.3d 22, 584 N.E.2d 1175, paragraph one of the syllabus; *State ex rel. Evans v. Indus. Comm.* (1992), 64 Ohio St.3d 236, 594 N.E.2d 609; *Zavatsky v. Stringer* (1978), 56 Ohio St.2d 386, 10 O.O.3d 503, 384 N.E.2d 693, paragraph one of the syllabus. When the answer to this question is "no," all compensation, expenses, and awards of every kind must be denied because the commission has no jurisdiction in such cases. *Lewis v. Trimble* (1997), 79 Ohio St.3d 231, 244, 680 N.E.2d 1207, citing 3 Larson, Workmen's Compensation Law (1996) 15–959 to 15–961, Section 80.41. However, "[w]hen the answer is 'yes,' the claimant has cleared the first hurdle, and then may attempt to establish his or her extent of disability." *Liposchak*, 90 Ohio St.3d at 279–280, 737 N.E.2d 519.

{¶ 19} The common pleas court, or a jury if one is demanded, is required to "determine the right of the claimant to participate or to continue to participate in the fund upon the evidence adduced at the hearing of the action." R.C. 4123.512(D). The Ohio Supreme Court has held that this hearing before the common pleas court is de novo. *Oswald v. Connor* (1985), 16 Ohio St.3d 38, 42, 16 OBR 520, 476 N.E.2d 658, citing *Swanton v. Stringer* (1975), 42 Ohio St.2d 356,

359, 71 O.O.2d 325, 328 N.E.2d 794; *State ex rel. Federated Dept. Stores, Inc. v. Brown* (1956), 165 Ohio St. 521, 60 O.O. 486, 138 N.E.2d 248. Thus, in reaching its own conclusion, the trial court must disregard the decision and rationale of the Industrial Commission. *Iiams v. Corporate Support, Inc.* (1994), 98 Ohio App.3d 477, 479, 648 N.E.2d 902; see, also, *Williams v. Harsco Corp.* (1994), 94 Ohio App.3d 441, 640 N.E.2d 1193, appeal not allowed, 70 Ohio St.3d 1441, 638 N.E.2d 1044; *Reed v. MTD Prods., Inc., Midwest Industries* (1996), 111 Ohio App.3d 451, 676 N.E.2d 576, appeal not allowed, 77 Ohio St.3d 1472, 673 N.E.2d 137. Furthermore, "[s]ections 4123.01 to 4123.94 [Ohio Workers' Compensation statutes], inclusive, of the Revised Code shall be liberally construed in favor of employees * * *." R.C. 4123.95. Thus, it is with these basic concepts in mind that we proceed to decide the issues concerning the asbestosis claims presently before us.

{¶ 20} The appellants seek to participate in the fund based upon their assertions that they contracted asbestosis in the course of and arising out of their employment. The Revised Code provides a list, although not all-inclusive, of occupational diseases that are covered by workers' compensation. Specifically, R.C. 4123.68 states: "The following diseases are occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section: * * * (AA) Asbestosis." Therefore, the asbestosis claims of the appellants herein are, ordinarily, compensable occupational diseases. However, division (Y) of that section further states:

{¶ 21} Before awarding compensation for disability or death due to silicosis, asbestosis, or coal miners' pneumoconiosis, the administrator shall refer the claim to a qualified medical specialist for examination and recommendation with regard to the diagnosis, the extent of disability, the cause of death, and other medical questions connected with the claim. An employee shall submit to such examinations, including clinical and x-ray examinations, as the administrator requires. In the event that an employee refuses to submit to examinations, including clinical and x-ray examinations, after notice from the administrator, * * * then all rights for compensation are forfeited.

{¶ 22} R.C. 4123.68(Y).

{¶ 23} The examination provided for in R.C. 4123.68(Y) is different from other medical examinations in workers' compensation cases. Pursuant to R.C. 4123.53(A), "[t]he administrator of workers' compensation or the industrial commission *may* require any employee claiming the right to receive compensation to submit to a medical examination * * *." (Emphasis added.) In addition, "[i]f an employee refuses to submit to any medical examination * * * scheduled pursuant to this section or obstructs the same," his or her claim or right "to receive any payment for compensation theretofore granted, is suspended during the period of

refusal or obstruction." R.C. 4123.53(C). However, the examination by a qualified medical specialist regarding claims for silicosis, asbestosis, and coal miners' pneumoconiosis is *mandatory*. Furthermore, if an employee refuses to submit to such an examination, "all rights for compensation are forfeited." R.C. 4123.68(Y). Thus, not only is an examination in these specific types of cases required, the refusal to submit to such an examination results in the forfeiture of one's claim. This is distinctly different from other claims, in which a medical examination is a discretionary determination by the commission or the BWC and the failure to comply results in a mere suspension of the claim.

{¶ 24} The mandatory nature of the examination by a *qualified medical specialist* and the harsh result of a refusal to submit to this examination reflect a great importance placed on this type of examination by the General Assembly when determining asbestosis, silicosis, and pneumoconiosis claims. See *State ex rel. Marshall v. Keller* (1968), 15 Ohio St.2d 203, 204, 44 O.O.2d 184, 239 N.E.2d 85 (discussing examination by qualified medical specialist for silicosis claim under former R.C. 4123.68[W] ); *State ex rel. Fulton Foundry & Machine Co., Inc. v. Indus. Comm.* (1959), 168 Ohio St. 410, 416, 7 O.O.2d 254, 155 N.E.2d 898 (Herbert, J., dissenting) (discussing examination by qualified medical specialist for silicosis claim under former R.C. 4123.68(W)); *State ex rel. Diamond Shamrock Chem. Co. v. Indus. Comm.* (Jan. 21, 1975), 10th Dist. No. 74AP–370. In cases of asbestosis, the need for a qualified medical specialist is especially important, given the long period between initial contact and apparent effect and the difficulty in determining the exposure to asbestos dust that is responsible for the disease. See *Goldman v. Johns–Manville Corp.* (June 30, 1986), 6th Dist. No. L–85–016, 1986 WL 7374.

{¶ 25} In light of the difficulty presented with silicosis, asbestosis, and coal miners' pneumoconiosis claims and the sheer volume of potential claims for these diseases given their latency, the Industrial Commission adopted Resolution No. R96–1–01 in February, 1996, pursuant to its authority under R.C. 4121.03(E)(1).[2] This Resolution states:

WHEREAS, pursuant to the provision of Section 4123.68 of the Ohio Revised Code, before awarding compensation for disability or death due to silicosis, asbestosis, [or] coal miners pneumoconiosis, * * * the Administrator is to refer the claim to a qualified medical specialist for examination and recommendation with regard to diagnosis, extent of disability, or other medical questions connected with the claim; and

---

2. At the time of the adoption of Resolution R96–1–01, the commission acted pursuant to it authority under R.C. 4121.03(F), which is no longer in existence, but the same authority is now codified under division (E).

WHEREAS, questions have arisen regarding the nature of the medical evidence necessary in order to be submitted by the claimant pursuing a claim for an occupational disease of the respiratory tract resulting from injurious exposure to dust, under the provisions of Section 4123.68 of the Ohio Revised Code, prior to the referral of the claim to the Administrator for an examination by a qualified medical specialist.

THEREFORE BE IT RESOLVED that it is the policy of the Industrial Commission that at a minimum the following evidence is necessary to be submitted by the claimant prior to the referral of the claim to the Administrator for an examination by a qualified medical specialist * * *:

- A written interpretation of x-rays by a certified B reader.
- Pulmonary functions studies and Interpretation by a licensed physician.
- An opinion of causal relationship by a licensed physician.

Thus, pursuant to R96–1–01, an employee claiming the right to participate in the Workers' Compensation Fund must submit the aforementioned three items prior to being referred to a qualified medical specialist for the mandatory R.C. 4123.68(Y) exam. It is this Resolution in conjunction with the previously quoted portion of R.C. 4123.68(Y) that is at the center of the dispute between the parties.

{¶ 26} In the case sub judice, the appellants readily admit and the record reveals that they each submitted only the "B reader." At no point in the administrative proceedings did any of the appellants submit the pulmonary functions studies and interpretation or an opinion of causal relationship by a licensed physician. To the contrary, in each case, a letter was written both to the DHO and the SHO stating that the appellants were "in the process of obtaining additional medical information in order to facilitate the referral of this matter to a BWC medical specialist pursuant to Industrial Commission Resolution R96–1–01." This letter evidences not only the appellants' knowledge of the requirement that a qualified medical specialist examine them but also that in order to obtain a referral to such a specialist, they had to submit these other two items. However, despite this knowledge, the appellants admit that they failed to submit the necessary items, failed to attend the administrative hearings, and failed to request a continuance to obtain these items. In addition, in each claim, nearly two years had elapsed between the alleged date of injury and the filing of the claim with the BWC. Thus, the appellants had more than an adequate amount of time to obtain the items necessary for the BWC's referral to the specialist.

{¶ 27} Nevertheless, the appellants maintain that they were never provided notice by the BWC that they were being referred to a qualified medical specialist. Thus, their argument follows that the trial court erred in granting summary judgment to Powertrain and dismissing their claims based upon its interpretation of R.C. 4123.68(Y). In response, although Powertrain and the BWC concede that

specific notice of the referral of their claims to a qualified medical specialist was not provided to the appellants, Powertrain maintains that each appellant was on notice of the need to submit the items required by Resolution R96–1–01 in order to obtain the required referral from the BWC. Further, Powertrain and the BWC assert that the examination by a qualified medical specialist is a condition precedent to the determination of the appellants' rights to participate in the fund. For the reasons that follow, we agree with Powertrain and the BWC.

{¶ 28} As previously noted, R.C. 4123.68(Y) mandates an examination by a qualified medical specialist before an award of compensation can be made. The purpose for this is so the qualified medical specialist can make a recommendation "with regard to the *diagnosis,* the extent of disability, the cause of death, and *other medical questions connected with the claim."* (Emphasis added.) R.C. 4123.68(Y). Given the purpose of the qualified medical specialist exam, his or her recommendations must be assessed prior to compensating a claimant, as they are critical in the determination that a claimant, in fact, suffers from silicosis, asbestosis, or coal miners' pneumoconiosis. Further, the examiner provides recommendations regarding other medical questions connected with the claim, such as whether the disease resulted from the claimant's exposure to dust while in the course of and arising out of his or her employment. Thus, this examination is a prerequisite, i.e., condition precedent, to a determination of whether the claimant has a right to participate in the fund.

{¶ 29} Moreover, the reason no referral to a qualified medical specialist was made by the administrator was the appellants' utter disregard for Resolution R96–1–01. The Ohio Supreme Court has determined that " '[i]t was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or "skeleton" showing in the hearing and thereafter obtain an unlimited trial *de novo.'* " *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 82, 679 N.E.2d 706, quoting *Bohn v. Watson* (1954), 130 Cal.App.2d 24, 37, 278 P.2d 454, 462. Although *Foreman* was a mandamus action, the court's rationale in the resolution of that case is equally applicable here. For instance, in *Foreman,* the court stated that " '[t]he rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play.' " *Foreman,* 79 Ohio St.3d at 82, 679 N.E.2d 706, quoting *Bohn,* 130 Cal.App.2d at 37, 278 P.2d at 462.

{¶ 30} In *Foreman,* the record revealed that the claimant retired prior to seeking permanent total disability benefits. *Foreman,* 79 Ohio St.3d at 80–81, 679 N.E.2d 706. The employer filed a mandamus action, asserting that the commission failed to address the issue of whether retirement precluded the

claimant's eligibility for permanent total disability compensation. Id. While the fact of the claimant's retirement was known to the commission, the employer failed to pursue this issue during the administrative process. Id. at 81, 679 N.E.2d 706. In deciding this case, the court held that parties to an administrative proceeding must fully raise their issues in order to allow for the preparation of the case and to permit the hearing officer to make "appropriate findings thereon." Id at 82, 679 N.E.2d 706. Furthermore, "[t]o do as the employer suggests would not only deny the claimant a meaningful opportunity to respond, but would also conflict with the court's directive that '[the commission] is not to be regarded as an adversary of the claimant as in other litigation.'" Id., quoting *Miles v. Elec. Auto–Lite Co.* (1938), 133 Ohio St. 613, 616, 11 O.O. 339, 15 N.E.2d 532.

{¶ 31} Here, the appellants knew that an examination by a qualified medical specialist was necessary, as evidenced in their letters to both the DHO and SHO. These letters also reveal knowledge by the appellants of the requirements of Resolution R96–1–01 in order to obtain a referral. However, despite this knowledge, the appellants submitted only one of the necessary items and have failed, even at the common pleas court level, to submit the other two items. In addition, the appellants did not appear at either of their administrative hearings and expressed their intention not to do so in their letters to the hearing officers without ever requesting a continuance. We find this willful derogation of the administrative process to be contrary to the purpose of the proceedings before the BWC and the commission. The appellants provided very little to the commission in support of their claims, did not appear at their hearings, and then expected an unlimited trial de novo, wherein they could present their own medical evidence of their diagnosis and the cause thereof without any evaluation by the BWC qualified medical specialist. This expectation of a trial de novo despite the lack of compliance with the administrative requisites for that trial is not only contrary to the legislative intent behind the workers' compensation scheme, even with the most liberal construction of these statutes, but is also forbidden by the Ohio Supreme Court. See *Foreman,* 79 Ohio St.3d at 82, 679 N.E.2d 706.

{¶ 32} Given the condition precedent to a determination of whether a claimant is entitled to participate in the fund, i.e., a qualified medical specialist examination, the appellants' failure to submit the items necessary to obtain this examination, and the purpose and function of the workers' compensation scheme, we find that the trial court did not err in granting summary judgments in favor of Powertrain and the BWC. In addition, this determination that Powertrain and the BWC were entitled to these judgments as a matter of law is further supported by the fact that the appellants failed to present evidence even to the trial court by way of depositions, affidavits, and supporting documents to show that they had

the right to participate in the fund. Thus, the three assignments of error are overruled, and the judgments of the Common Pleas Court of Defiance County, Ohio, are affirmed.

Judgments affirmed.

CUPP and THOMAS F. BRYANT, JJ., concur.