DECISION
{¶ 1} Relator, Sheri Wells, has filed this original action requesting a writ of mandamus from this court. Specifically, relator requests that we order respondent Industrial Commission of Ohio ("commission") to vacate its order disallowing the claim of relator's late husband, Gregory Wells. The basis of her request is that decedent's fatal injuries occurred within the course and scope of his employment with respondent Eagle Fireworks, Inc.
 {¶ 2} In reversing its own Staff Hearing Officer ("SHO"), the commission exercised its continuing jurisdiction to find that the SHO's order was legally deficient. The SHO had concluded that the decedent's injuries occurred within the course and scope of employment and the claim should be allowed.
 {¶ 3} Initially, this matter was referred to a magistrate of the Tenth District Court of Appeals pursuant to Civ.R. 53(C) and Loc.R. 12(M). The magistrate's findings of fact and conclusions of law are attached to this decision as Appendix A. The magistrate's decision concluded that relator was not entitled to a writ compelling the commission to vacate its order. This recommendation first found that the commission had not abused its discretion in exercising continuing jurisdiction in the case. Further, the magistrate's recommendation found that the SHO's order was deficient, thus supporting the commission's basis of reversal of the SHO.
 {¶ 4} To the extent that any issues of fact remain, it is sufficient that the parties agree that while some facts are in dispute, they are either not material or not necessary for a resolution of the present action.
 {¶ 5} The uncontroverted material facts showed that decedent worked for respondent Eagle Fireworks, Inc. At the time of his injury, he was in San Diego, California, for a work-related convention. On the night in question, he attended a dinner, fireworks display, concert, and reception. The decedent consumed alcoholic beverages throughout the evening. On the way back to his hotel room from the reception, the decedent attempted to ride on the back of a golf cart. The decedent was described as holding on to the roof of the cart with one hand and holding a beer bottle in the other. Decedent either lost his balance or his grip and fell, striking his head on the ground. He died of his injuries six days later.
 {¶ 6} Relator filed her claim for compensation, which was denied by order dated November 6, 2002, by the Ohio Bureau of Workers' Compensation ("bureau"). The basis for the denial was that the alcohol used by the decedent was a contributing factor in causing his fatal injuries and that, under R.C. 4123.54(A), such an injury or death is not compensable when the intoxication of the claimant is the proximate cause of the injury.
 {¶ 7} On appeal by relator from this denial, a District Hearing Officer ("DHO") heard the matter on January 15, 2003, and again denied the claim. At this hearing, there was conflicting expert testimony that placed the decedent's blood alcohol level either as high as .225 in the opinion of the bureau expert or as low as .191 or lower in the opinion of relator's expert.
 {¶ 8} The matter was appealed to the commission and heard before the SHO on June 3, 2003. The SHO vacated the DHO's order and granted the claim, now finding that the injuries had occurred during the course and scope of the decedent's employment. In her ruling, the SHO found that the bureau had not established that decedent's death occurred as a result of impermissible horseplay, nor that it was proximately caused by alcohol intoxication. In reaching this last conclusion, the SHO indicated her reliance on the testimony of relator's expert, Alfred E. Staubus, Pharm. D., Ph.D., as well as on the evidence from treating physicians and San Diego emergency response personnel.
 {¶ 9} An initial appeal by the bureau was refused by order of the commission mailed July 15, 2003. The bureau filed a motion for reconsideration from this refusal, and on August 19, 2003, the commission issued an interlocutory order vacating its July 15 order. The commission then proceeded to find that the SHO's order was based "on a clear mistake of law," that the exercise of continuing jurisdiction was appropriate, and that the SHO had failed to explain her rationale for finding that the decedent was within the course and scope of his employment at the time of the accident. The commission found that the more persuasive expert testimony in the record supported a finding that a high blood alcohol concentration in the decedent was the proximate cause of the accident. The commission, as had the DHO, denied the claim on this basis.
 {¶ 10} Relator thereafter filed the present mandamus action in this court, as well as a notice of appeal in the Washington County Court of Common Pleas pursuant to R.C. 4123.512 (the "right to participate" action). The two actions have progressed in parallel, and the continuation of the Washington County action depends in some respects on the outcome of the mandamus proceeding before us.
 {¶ 11} The matter is presently before us on relator's objections to the magistrate's decision. We note ab initio that, in response to relator's objections, respondents have reiterated their motion to dismiss before the magistrate. Specifically, respondents argue that mandamus should not lie in this action and dismissal would be appropriate because relator had an adequate remedy at law in the form of the right-to-participate action concurrently pursued as an appeal in the Washington County Court of Common Pleas. As the magistrate noted, the question raised in this mandamus action is whether the commission properly exercised continuing jurisdiction when it vacated the SHO's prior order. This is not an issue that could be properly raised before the court of common pleas in the right-to-participate action:
* * * [I]n an appeal, pursuant to R.C. 4123.512, the issues to be addressed by the [court of common pleas] would be those relating to the presence of a medical condition and whether or not it was a work-related injury, and the [court of common pleas] would not address and could not correct an improper exercise of jurisdiction by the commission granting reconsideration pursuant to R.C. 4123.52. * * *
(Emphasis sic.) State ex rel. Forrest v. Anchor HockingConsumer Glass, Franklin App. No. 03AP-190, 2003-Ohio-6077, at ¶ 6. Relator's action in the court of common pleas, therefore, is not an adequate remedy to address the isolated issue of the commission's exercise of continuing jurisdiction. The act of granting an application for reconsideration by exercising continuing jurisdiction does not fall under the penumbra of a right-to-participate action. Because the issue of exercising continuing jurisdiction is separate and distinct from a right-to-participate action, the issue of continuing jurisdiction could not be challenged in relator's action in the court of common pleas. Therefore, the magistrate correctly declined to dismiss the present mandamus action.
 {¶ 12} Turning to relator's objections to the substance of the magistrate's decision, the sum of relator's argument is that the commission improperly exercised its limited continuing jurisdiction, and that the commission's order vacating the SHO's decision was incorrect. Relator's argument is that both the magistrate and the commission improperly applied the minimum standards set forth in State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, in regards to the SHO's decision.Noll requires that the hearing officer not only specifically state which evidence was relied upon, but the officer also needs to explain the officer's rationale as to why the claimant was granted or denied benefits based on applicable law as applied to the evidence produced.
 {¶ 13} Both the commission and the court's magistrate found that, in violation of the requirements set forth in Noll, the SHO had failed to sufficiently articulate her reasoning in applying the pertinent law to the facts of the case, to wit: exactly why did the SHO determine that relator's decedent was within the course and scope of his employment at the time of his injury.
 {¶ 14} In response to the objections to the magistrate's decision, the respondent concedes that the magistrate erred in finding that the SHO's failure to comply with Noll constituted a clear error of law. Noll is inapplicable to those aspects of commission orders that may be appealed in a right-to-participate action under R.C. 4123.512. Such an action calls for a de novo review by the court of common pleas. Such a de novo proceeding renders irrelevant any prior itemization of evidence and development of reasoning expressed by the hearing officer. Stateex rel. Hamlin v. Indus. Comm. (Sept. 30, 1992), Franklin App. No. 91AP-1133, reversed on other grounds (1993),68 Ohio St.3d 21, citing State ex rel. Mitchell v. Robbins Myers, Inc.
(1983), 6 Ohio St.3d 481, 484; Skerya v. Indus. Comm. (1986), 30 Ohio App.3d 154. Despite this concession, respondent nonetheless argues that the SHO's order is otherwise subject to review under the commission's continuing jurisdiction.
 {¶ 15} Under the language of R.C. 4123.52 set forth below, the commission is vested with continuing jurisdiction over its orders after issuance of a final order:
The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified. * * *
 {¶ 16} The Supreme Court of Ohio, however, has limited the commission's continuing jurisdiction:
* * * Continuing jurisdiction can be invoked only where one of these preconditions exists: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. * * *
State ex rel. Gobich v. Indus. Comm., 103 Ohio St.3d 585,2004-Ohio-5990, at ¶ 14, citing State ex rel. Nicholls v. Indus.Comm. (1998), 81 Ohio St.3d 454, 459. "The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. * * * This means that the prerequisite must be both identified and explained. Id. It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is. * * * This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. * * * It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked." Gobich, at ¶ 14-15. (Citations omitted.)
 {¶ 17} The only reason given by the commission in exercising reconsideration jurisdiction in its interlocutory order entered August 19, 2003, was that the SHO "failed to explain the rationale for finding that the decedent was in the course and scope of his employment [at the time of the accident]." In other words, the commission found that the SHO had failed to comply with Noll in making a scope of employment determination. In its subsequent decision vacating the SHO's order, the commission again reiterated its finding that the SHO had failed to explain the rationale for the conclusion that the decedent was acting within the course and scope of his employment.
 {¶ 18} The commission's reasons given for exercising continuing jurisdiction in this case do not comply with Gobich
and Nicholls. The clear mistake of law relied upon by the commission in exercising continuing jurisdiction is the alleged failure by the SHO to issue an order that explained the rationale for finding that the decedent was within the course and scope of his employment at the time of the accident. In other words, although the commission did not specifically cite Noll, the commission found that the SHO had failed to comply with Noll in making the scope-of-employment determination. As we set forth above, Noll is inapplicable in instances in which the commission's order is subject to a de novo review by means of an appeal under R.C. 4123.512, that is, a right-to-participate action that will examine de novo the scope-of-employment issues.
 {¶ 19} Thus there was no clear mistake of law in the SHO's order, at least in this respect, and the commission therefore inappropriately exercised its continuing jurisdiction. The commission's order vacating the SHO's previous order must itself be vacated and the SHO's order reinstated.
 {¶ 20} Thus, the SHO's failure to fully explain the decision did not present a clear mistake of law, and the commission inappropriately exercised its continuing jurisdiction on that basis. Therefore, while we do not limit the commission's authority to exercise its continuing jurisdiction on other grounds, even for other identifiable mistakes of law, the commission's February 18, 2004 order vacating the SHO's previous order must be vacated and the SHO's order reinstated. A writ shall issue ordering respondent Industrial Commission of Ohio to vacate its order exercising continuing jurisdiction in the case.
Objections sustained;
 writ of mandamus granted.
French and McGrath, JJ., concur.
CHRISTLEY, J., retired of the Eleventh Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Sheri Wells, : :
Relator, : :
v. : No. 04AP-758 :
Industrial Commission of Ohio : and Eagle Fi[r]eworks, Inc., : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on April 11, 2005 Law Offices of Thomas Tootle, and Thomas Tootle, for relator.
Jim Petro, Attorney General, and William J. McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 21} Relator, Sheri Wells, the widow of Gregory Wells ("decedent"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order exercising its continuing jurisdiction and ultimately disallowing the claim of decedent in its entirety based upon a finding that his injuries did not occur in the course of his employment with respondent Eagle Fireworks, Inc.
Findings of Fact:
 {¶ 22} 1. Decedent was an employee of respondent Eagle Fireworks, Inc. ("employer").
 {¶ 23} 2. At the time he was injured, decedent was in San Diego, California, for a work convention. On the evening of September 25, 2002, decedent attended a concert, dinner, and fireworks display. Between 10:30 p.m. and 11 p.m., decedent attended a private reception hosted by an insurance agency active with the fireworks industry. Upon leaving the reception, decedent, who had consumed alcoholic beverages all evening, was getting a ride back to his hotel room while standing on the back of a golf cart. The record shows that decedent was holding on to the roof of the cart with one hand while holding a beer bottle in the other hand. Decedent lost his balance, fell off the cart, and struck his head.
 {¶ 24} 3. As a result of head injuries, decedent died on October 1, 2002.
 {¶ 25} 4. On October 10, 2002, relator filed a claim for compensation with the Ohio Bureau of Workers' Compensation ("BWC").
 {¶ 26} 5. By order dated November 6, 2002, the BWC concluded that alcohol was a contributing factor to decedent's injuries. Blood alcohol reports indicate a .23 percent blood alcohol level reading.
 {¶ 27} 6. Relator appealed and the matter was heard before a district hearing officer ("DHO") on January 15, 2003, and resulted in an order denying the claim. The BWC submitted the report of Ted Parran, M.D., who opined that decedent's blood alcohol level resulted in decedent's judgment and balance being affected and that decedent's intoxication was a major contributing factor to his loss of balance and resulting injuries. Relator submitted the report of Alfred E. Staubus, Ph.D., who opined that medical blood alcohol tests result in higher concentrations than in fact exist. Dr. Staubus opined that decedent's blood alcohol was not really .225 percent but was actually .191 percent. Further, Dr. Staubus opined that injury plus the administration of medical attention can produce high results (shock; intravenous administration of Ringer's solution; surgery). Because the hospital did not determine decedent's levels of lactate and LDH enzyme, Dr. Staubus opined that the results were not reliable. The DHO denied the claim as follows:
District Hearing Officer specifically denies this claim for the conditions of "CLOSED SKULL FRACTURE WITH BRIEF COMA" and "AC RENAL FAILURE".
Based on Phelps vs. Positive Action Tool Company
and ORC Section 4123.54, District Hearing Officer finds that the injuries occurring 09/25/2002 and death sustained by the deceased injured worker on 10/01/2002 were related to the deceased injured worker being intoxicated and that injured worker's intoxication at the time of his injuries was the proximate cause of the injuries and death to the deceased injured worker in relation to him falling off the back of a golf cart and striking his head on the surrounding pavement on 09/25/2002.
District Hearing Officer bases the above decision on the following: 1) the medical report by Dr. Parran filed 01/14/2002 [sic] supporting the causality of the 09/25/2002 accident in relation to injured worker's intoxication at the time of his injuries on 09/25/2002 which led to his death on 10/01/2002; 2) the 10/06/2002 blood culture report regarding a tested sample of the deceased injured worker's blood from 09/25/2002 which verified a Blood Alcohol Level of .225 or 225 mb/dl; 3) the statement by Jerry Bostocky dated 11/08/2002, who was with the deceased injured worker at the time of his injuries, noting a beer bottle was in Gregory Wells' hand when the deceased injured worker fell from the golf cart to the ground on 09/25/2002; 4) the 09/26/2002 report by Dr. Hammerstead who examined Gregory Wells shortly after the 09/25/2002 accident and noted a "strong odor of ethanolic beverage on breath"; 5) the 10/01/2002 report by Dr. Boiskin and the 09/26/2002 report by Dr. Soumekh which support Gregory Wells was drinking alcohol prior to his injuries on the night of 09/25/2002; 6) the police report from 09/25/2002 completed by Officer Stuart Littlefield which notes the following: a) a statement by Deborah Sprague, who was with the deceased injured worker at the time of the accident, noting Gregory Wells was "pretty intoxicated" and that Gregory Wells was holding a beer bottle while he rode on the back of golf cart on 09/25/2002 prior to his death, b) a statement by Gerald Bostocky noting Gregory Wells had consumed alcohol in his presence on 09/25/2002 and c) a statement by Ken Sprague, who was also present when Gregory Wells was injured, who stated the deceased injured worker was holding a beer in one hand as he fell from the golf cart on 09/25/2002; 7) the testimony by Mr. Fred Wells and Ms. Sandra Ashcraft at hearing which support the fact that the deceased injured worker was drinking alcohol before 9:00 p.m. (Pacific Standard Time) on 09/25/2002 when Gregory Wells had dinner at the" Barefoot Restaurant" prior to the convention fireworks and had continued to drink at least until 10:30 p.m. (Pacific Standard Time) on 09/25/2002 when they left Gregory Wells back at the "Barefoot Restaurant" after the convention fireworks were over and 8) the testimony of Ms. Sandy Ashcraft at hearing that stated the deceased injured worker purchased alcohol from the bar located at the convention fireworks display between 9:00 p.m. and 10:00 p.m.
Therefore, based on the foregoing, District Hearing Officer denies the FROI-1 filed 10/10/2002 by the widow-spouse regarding the death of her late husband and the deceased injured worker, Gregory J. Wells.
(Emphasis sic.)
 {¶ 28} 7. Relator appealed and the matter was heard before a Staff Hearing Officer ("SHO") on June 3, 2003. The SHO vacated the prior DHO order and granted the claim as follows:
The claim is allowed for the conditions of "CLOSED SKULL FRACTURE WITH BRIEF COMA" and "AC RENAL FAILURE". The deceased injured worker suffered these injuries as a result of a golf cart accident in the course of and arising out of his employment on 09/25/2002. These injuries resulting in his death on 10/01/2002.
The Staff Hearing Officer bases this finding on the arguments as set forth in the brief for hearing, with attached witness statements, submitted by Attorney Terrence Larrimer, representative of the widow-claimant. This evidence establishes that the decedent's death was in the course of and arising out of his employment.
The BWC has not established that the decedent's death occurred as a result of impermissible horseplay.
The BWC has not established that the decedent's death was proximately caused by alcohol intoxication, based on the reports of OSU Pharmacologist, Alfred E. Staubus, Pharm. D., Ph.D., dated 02/10/2003 and addendum dated (undated) filed 05/20/2003.
Based on the San Diego EMS report dated 09/25/2002, Scripps Memorial Hospital Emergency Room record dated 09/26/2002, report of Dr. Soumekh dated 09/26/2002, report of Dr. Altenau dated 09/30/2002, report of Dr. Boisken [sic] dated 10/01/2002.
It is the finding of the Staff Hearing Officer that the death was a result of an accident in the course of and arising out of employment.
(Emphasis sic.)
 {¶ 29} 8. The administrator of the BWC appealed and that appeal was refused by order of the commission mailed July 15, 2003.
 {¶ 30} 9. The administrator of the BWC filed a motion for reconsideration.
 {¶ 31} 10. On August 19, 2003, the full commission issued an interlocutory order vacating the prior SHO order. That order states, in pertinent part, as follows:
It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
Specifically, it is alleged that the Staff Hearing Officer failed to explain the rationale for finding that the decedent was in the course and scope of his employment at the time of the accident.
The order issued 07/15/2003 is hereby vacated.
The matter was then set for hearing to determine if the alleged mistake of law was sufficient for the commission to invoke its continuing jurisdiction.
 {¶ 32} 11. Thereafter, by order mailed February 18, 2004, the commission vacated the prior SHO order and denied relator's claim as follows:
The Industrial Commission finds that the Staff Hearing Officer order, dated 06/03/2003, is based on a clear mistake of law, and that the exercise of continuing jurisdiction in this case is appropriate. This clear mistake of law is that the Staff Hearing Officer failed to explain the rationale for finding that the decedent was in the course and scope of his employment and that this incident arose out of his employment.
All information and evidence on file has been carefully considered. It is the finding of the Industrial Commission that the decedent was employed as the general manager of Eagle Fireworks, and that his father was the president of that company. The American Pyrotechnics Association, which the company was a member of, had its annual convention at a resort in San Diego, California, in September of 2002. The decedent, his wife, Sheri Wells, and his father, Fred Wells, flew to California for the convention on 09/25/2002. This convention was important for the business of Eagle Fireworks due to the business contacts it facilitated. The evening of the 25th, there was a concert, a dinner, and a fireworks display. At some point that evening, Sheri Wells and Fred Wells returned to their rooms. In the 10:30 p.m. to 11:00 p.m. time frame, the decedent went to a private reception hosted by Britton Gallagher, an insurance agency active with the fireworks industry. There is some indication that Eagle Fireworks had previously contacted Britton Gallagher about obtaining coverage. The decedent was at this reception for about one-half hour. Affidavits on file state that the decedent may have made arrangements with the Britton Gallagher people later on at the convention, but no other actual business was conducted at the reception.
It is important to note that throughout the evening of the 25th, at all of the events and functions, alcohol was present and being served. No one kept track of exactly how many drinks the decedent consumed, but all of the evidence shows that he was seen drinking beer on several occasions that evening.
Upon leaving the Britton Gallagher reception, the decedent and several other people were offered rides back to their rooms on a golf cart, which had been provided to another company in attendance at the convention. This golf cart was driven by Jeff Berone and Jerry Bostocky was riding in the front seat as well. Ken and Debbie Sprague were in the back seats. The decedent and Alan Zoldan stood on the back of the cart, with the decedent standing closest to where Mrs. Sprague sat. The decedent did have a beer bottle in one hand. This cart was not made for six passengers, and the decedent and Mr. Zoldan had to hang on to a roof rail for support. The first passenger to get off was Mr. Zoldan. This cart did not go over three or four miles per hour, and there is no evidence that it jerked or hit any bumps. In any event, after starting back up, Mrs. Sprague gave a yell that the decedent had fallen off. In his statement, Jerry Bostocky said that upon hearing Mrs. Sprague yell, he had ". . . turned to see the beer bottle fly and Greg Wells fall to the right off the cart." In a transcribed telephone interview of Jeff Berone (the driver) carried out on 11/01/2002, Berone states that Ken Sprague told him two days later that the decedent lost his grip and fell off the cart when he threw his head back to get the last of the beer from the bottle. However, this is not necessarily accepted as fact, since Ken Sprague did not repeat this story in any of his other direct statements on file. There is a statement on file from Mrs. Sprague, which was given to Officer Resch of the San Diego Police Department about an hour after this accident occurred. * * *
* * *
The decedent did fall off the back of the golf cart, sustaining a very severe head injury. He was quickly taken to a hospital, but he never regained consciousness and he passed away 10/01/2002. The hospital did perform a blood alcohol test on 09/26/2002, with the results being a BAC of 225 mg/dl, or .23%. The spouse and the Administrator have both submitted expert opinion reports, which address the validity of these test results and, assuming the results to be valid, how this level of alcohol might have affected the decedent. In this regard, there are two reports from Ted Parran, M.D. (01/10/2003 and 03/12/2003), and two reports from Alfred E. Staubus, Pharm. D., Ph.D. (02/11/2003 and 04/19/2003). All four reports have been carefully considered, and the opinion of Dr. Parran is found more persuasive. Based on all the evidence on file, Dr. Parran opined that the test results obtained by the hospital were accurate and that the decedent's blood alcohol concentration ". . . was a critical and causative agent in the etiology of his injury."
It is the finding and order of the Industrial Commission that this accident was caused by the decedent's intoxication and that it did not arise out of his job duties. Per R.C. 4123.54(A), an injury or death is not compensable if it is caused by the individual being intoxicated, where the intoxication was the proximate cause of the injury, and based on the witness testimony referred to above, as well as the blood alcohol results and the reports of Dr. Parran, that is found to be the case herein. This claim is disallowed in its entirety, and specifically for the conditions of "closed skull fracture with brief coma, AC renal failure."
 {¶ 33} 12. On March 11, 2004, relator filed a notice of appeal in the Franklin County Court of Common Pleas pursuant to R.C. 4123.512 relative to the denial of the claim.
 {¶ 34} 13. On May 6, 2004, relator filed a mandamus action in this court; however, that complaint was voluntarily dismissed on July 27, 2004. On that same day, relator filed the instant complaint in mandamus alleging that the commission abused its discretion in exercising its continuing jurisdiction.
 {¶ 35} 14. Respondent filed a motion to dismiss alleging that relator had a plain and adequate remedy in the ordinary course of the law pursuant to her R.C. 4123.512 appeal.
 {¶ 36} 15. By order dated September 14, 2004, the magistrate denied respondent's motion to dismiss. Based on the authority of [State ex rel.] Forrest v. Anchor Hocking Consumer Glass,
Franklin App. No. 03AP-190, 2003-Ohio-6077, the magistrate determined that relator could bring a mandamus action challenging the commission's decision to exercise its continuing jurisdiction.
 {¶ 37} 16. The matter is currently before the magistrate.
Conclusions of Law:
 {¶ 38} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. For the reasons that follow, this magistrate concludes that relator is not entitled to a writ of mandamus.
 {¶ 39} In the present case, the commission granted a request for reconsideration. It is well-established that under R.C.4123.52, the commission has continuing jurisdiction to modify a final order when it determines that the order was based on an error of fact and of law, fraud, or when new and changed circumstances have arisen. See, for example, State ex rel. B CMachine Co. v. Indus. Comm. (1992), 65 Ohio St.3d 538.
 {¶ 40} Recently, the Supreme Court of Ohio reiterated the standard applied by the commission when exercising its continuing jurisdiction. The court stated, in State ex rel. Gobich v.Indus. Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, at ¶ 14-15, as follows:
The commission's power to reconsider a previous decision derives from its general grant of continuing jurisdiction under R.C. 4123.52. State ex rel. Royal v. Indus. Comm. (2002),95 Ohio St.3d 97, 99[.] * * * This authority, of course, has limits.State ex rel. B C Machine Co. v. Indus. Comm. (1992),65 Ohio St.3d 538, 541[.] * * * Continuing jurisdiction can be invoked only where one of these preconditions exists: (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal. State exrel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454, 459[.] * * *
The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. Nicholls; State ex rel. Fosterv. Indus. Comm. (1999), 85 Ohio St.3d 320[.] * * * This means that the prerequisite must be both identified and explained. Id. It is not enough to say, for example, that there has been a clear error of law. The order must also state what that error is.Nicholls, 81 Ohio St.3d at 459 * * *; Foster at 322[.] * * * This ensures that the party opposing reconsideration can prepare a meaningful defense to the assertion that continuing jurisdiction is warranted. Royal, 95 Ohio St.3d at 100[.] * * * It also permits a reviewing court to determine whether continuing jurisdiction was properly invoked. Id. at 99-100[.] * * *
 {¶ 41} In Gobich, at ¶ 11, the commission's order exercising continuing jurisdiction provided as follows:
"It is the finding of the Industrial Commission that the order of the Staff Hearing Officer is based on clear mistakes of law of such character that remedial action would clearly follow; therefore, the exercise of continuing jurisdiction is appropriate in this case. In granting the injured worker's application for permanent total disability, the Staff Hearing Officer failed to consider the fact that the injured worker was working immediately prior to, and after, the hearing on 01/22/1998."
 {¶ 42} The court found that, in reality, it was unclear whether the commission's reasoning was a mistake of law of a mistake of fact. While the commission claimed it was a mistake of law, the court noted that the commission cites no misapplication of law. To the contrary, the court noted that the commission referred only to an omission of fact.
 {¶ 43} Here, the commission concluded that the administrator of the BWC presented sufficient probative evidence to warrant adjudication of the request for reconsideration regarding an alleged clear mistake of law of such a character that remedial action would follow. The commission then concluded that the prior SHO order was based on a clear mistake of law and that the exercise of continuing jurisdiction was appropriate. The commission concluded that the SHO failed to explain the rationale for finding that the decedent was in the course and scope of his employment and that the incident arose out of his employment. There is no ambiguity here as there was in Gobich.
 {¶ 44} Relator argues that, inasmuch as the SHO identified various documents upon which she relied, and then stated the following two conclusions — "[t]he BWC has not established that the decedent's death occurred as a result of impermissible horseplay," and "[i]t is the finding of the Staff Hearing Officer that the death was a result of an accident in the course of and arising out of employment" — that the SHO satisfied the requirements of the law. This magistrate disagrees.
 {¶ 45} Pursuant to State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, it is not enough for the commission to simply cite the evidence upon which it relies to reach a particular conclusion. The commission is required, by law, to provide a brief explanation for its decision. In the present case, the SHO listed documents upon which she relied and then stated her conclusions. No explanation was provided. As such, the commission did not abuse its discretion when it exercised its continuing jurisdiction in the present case.
 {¶ 46} Based on the foregoing, it is the magistrate's decision that relator has not demonstrated that the commission abused its discretion in exercising its continuing jurisdiction in the present case as the SHO failed to follow Noll by explaining the rationale for the June 3, 2002 order. As such, the magistrate recommends that relator's request for a writ of mandamus be denied.