DECISION
{¶ 1} Relator, Wheeling-Pittsburgh Steel Corporation, has filed an original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the November 22, 2005 order of its staff hearing officer ("SHO") allowing the industrial claim of respondent Carl Filler ("claimant") for "occupational asthma *Page 2 
and chronic obstruction pulmonary disease," and to schedule a hearing on the allowance of the claim before a district hearing officer ("DHO").
 {¶ 2} R.C. Chapter 4123 sets forth a comprehensive scheme for workers' compensation. Anders v. Powertrain Div., General Motors Corp,157 Ohio App.3d 815, 2004-Ohio-2469, at ¶ 15. This scheme provides coverage for occupational diseases as well as injuries. Id. The statutory process pertaining to workers' compensation claims is set forth in R.C.4123.511. The process begins with the filing of a claim with the Bureau of Workers' Compensation ("bureau"); the bureau investigates the facts concerning the injury or occupational disease in whatever manner is most appropriate. R.C. 4123.511(A). In contested claims other than state fund claims, the bureau administrator forwards the claim to the commission, which refers the claim to an appropriate DHO for a hearing. R.C.4123.511(B)(3). Following a hearing on the disputed issue or claim, the DHO issues a decision. R.C. 4123.511(C). Any party dissatisfied with the district level decision may appeal. If an appeal is taken, the commission refers the claim file to an appropriate SHO for hearing. Following a hearing, the SHO issues a decision. R.C. 4123.511(D). The district and staff level hearings are mandatory and cannot be refused by the commission. R.C. 4123.511(C) and (D). Any party dissatisfied with the staff level order may appeal to the commission; however, the commission or a designated SHO, on behalf of the commission, has discretion to refuse that appeal without hearing. R.C. 4123.511(E).
 {¶ 3} As pertinent here, R.C. 4123.68 provides compensation for workers who contract occupational diseases as a result of their employment. R.C. 4123.68 includes "occupational disease[s] of the respiratory tract resulting from injurious exposures to dust" *Page 3 
as compensable occupational diseases. See R.C. 4123.68(AA). R.C.4123.68(Y) provides that prior to awarding compensation for disability or death due to such diseases, the administrator of the bureau of workers' compensation "shall refer the claim to a qualified medical specialist for examination and recommendation with regard to the diagnosis, the extent of disability, the cause of death, and other medical questions connected with the claim."
 {¶ 4} Commission Resolution R96-1-01 ("R96-1-01"), adopted February 26, 1996, requires a claimant to submit certain evidence before the administrator may refer the claim to a qualified medical specialist pursuant to R.C. 4123.68(Y). More particularly, R96-1-01 requires that the claimant produce x-rays interpreted by a "B reader," pulmonary functions studies interpreted by a physician, and a physician's opinion establishing a causal connection between the claimant's employment and the occupational disease. Commission Resolution R03-1-02 ("R03-1-02"), adopted March 5, 2003, modified R96-1-01 to some extent; however, the three evidentiary requirements set forth in R96-1-01 remain intact.
 {¶ 5} With the foregoing in mind, we turn to the instant matter. On May 22, 2003, claimant filed a First Report of an Injury, Occupational Disease or Death ("FROI-1") alleging that he developed chronic obstructive pulmonary disease and chronic bronchitis as a result of his exposure to particulates, including dust and dirt, over the course of his 30-year employment with relator. Relator, a self-insured employer, denied the claim. Thereafter, the claim progressed through the appropriate administrative channels and was ultimately denied on grounds that claimant failed to meet the evidentiary criteria established by R96-1-01 and R03-1-02. *Page 4 
 {¶ 6} On December 22, 2004, claimant filed another FROI-1 alleging, in essence, that which was alleged in the original FROI-1. Following a hearing on July 19, 2005, a DHO dismissed the claim for failure to satisfy R96-1-01 and R03-1-02.
 {¶ 7} Claimant appealed, and after a hearing on August 30, 2005, an SHO issued an interlocutory order finding that the claimant had satisfied the prerequisites of R96-1-01; accordingly, the SHO referred the claim to the administrator to arrange for an examination by a qualified pulmonary specialist pursuant to the provisions of R.C.4123.68. Another SHO refused relator's appeal.
 {¶ 8} Pursuant to the SHO's interlocutory order, a pulmonary specialist examined claimant and issued a report of his findings. Upon receipt of the examination results, an SHO held a hearing and thereafter issued an order on November 22, 2005, which allowed the claim for "occupational asthma" and "chronic obstructive pulmonary disease." Another SHO refused relator's appeal.
 {¶ 9} On January 27, 2006, pursuant to R.C. 4123.512, relator filed a notice of appeal in the Jefferson County Court of Common Pleas from the SHO's November 22, 2005 order from which the commission refused to hear an appeal. In that appeal, relator challenges the allowance of the claim for "occupational asthma" and "chronic obstructive pulmonary disease." That case remains pending.
 {¶ 10} On February 24, 2006, relator filed the instant complaint in mandamus. Relator asserts that the process employed by the commission unlawfully denied relator its statutory right to a district level hearing "on the merits" of the claim allowance. Relator claims that R.C.4123.511 required the commission to conduct hearings "on the merits" of the claim allowance at both the district and staff levels. More specifically, relator argues *Page 5 
that after claimant was examined by the pulmonary specialist pursuant to the SHO's August 30, 2005 interlocutory order, the matter of the contested claim allowance should have been heard by a DHO, rather than an SHO. Relator contends that because it was denied the two statutorily-required hearings "on the merits" of the claim application, this court must issue a writ of mandamus ordering the commission to vacate the unlawfully-issued SHO order and return the matter to the commission for hearing in accordance with the statutory process set forth in R.C. 4123.511.
 {¶ 11} The matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 12} Relator has filed an objection to the magistrate's decision. Claimant and the commission have filed responses in support of the magistrate's decision. In addition, the commission contends that mandamus does not lie in this action because relator has an adequate remedy at law in the form of the R.C. 4123.512 action in the Jefferson County Court of Common Pleas. Both claimant and the commission asserted this argument in response to relator's mandamus complaint; however, the magistrate did not address the issue in his decision, presumably because the magistrate ultimately recommended denial of the writ. Because the commission again raises the issue in response to relator's objection, we shall address it herein.
 {¶ 13} Relying upon State ex rel. Elyria Foundry Co. v. Indus.Comm. (1998), 82 Ohio St.3d 88, the commission argues that because relator has initiated proceedings in the common pleas court to have the claim disallowed in its entirety, relator's mandamus *Page 6 
action is not ripe for review and must be dismissed. More specifically, the commission contends that if relator succeeds in having the common pleas court vacate the allowance of the claim, the matter at issue will have become moot. Relator counters that the issue in mandamus is whether the commission properly employed the statutory process set forth in R.C.4123.511 in the administrative adjudication of the claim. Relator contends that while the substance of a commission order on claim allowance is appealable to the common pleas court under R.C. 4123.512, that section does not allow for review or correction of the procedure the commission uses in rendering its final administrative decision. According to relator, mandamus is the only avenue available to correct the commission's use of an illegal process.
 {¶ 14} R.C. 4123.512(A) permits appeal to a common pleas court in limited circumstances:
 The claimant or the employer may appeal an order of the industrial commission made under division (E) of section 4123.511 of the Revised Code in any injury or occupational disease case, other than a decision as to the extent of disability, to the court of common pleas of the county in which the injury was inflicted. * * * If the claim is for an occupational disease, the appeal shall be to the court of common pleas of the county in which the exposure which caused the disease occurred. Like appeal may be taken from an order of a staff hearing officer made under division (D) of section 4123.511 of the Revised Code from which the commission has refused to hear an appeal. * * *
 {¶ 15} The Supreme Court of Ohio has narrowly construed R.C. 4123.512
to permit appeal to a common pleas court of only those decisions involving the right of claimant to participate or continue to participate in the workers' compensation system. Indeed, in Afrates v.Lorain (1992), 63 Ohio St.3d 22, the court held that "[o]nly those decisions reviewable pursuant to R.C. 4123.519 [now 4123.512(A)] are those decisions *Page 7 
involving a claimant's right to participate or to continue to participate in the fund." Id. at paragraph two of the syllabus.
 {¶ 16} The court reiterated the rationale of Afrates in Felty v. AT T Tech., Inc. (1992), 65 Ohio St.3d 234, stating, "[a] decision by the commission determines the employee's right to participate if it finalizes the allowance or disallowance of an employee's `claim.' The only action by the commission that is appealable under R.C. 4123.519
[now R.C. 4123.512] is this essential decision to grant, to deny, or to terminate the employee's participation or continued participation in the system." Id. at 239.
 {¶ 17} In State ex rel. Liposchak v. Indus. Comm. (2000),90 Ohio St.3d 276, the court clearly delineated the issues that are appealable under R.C. 4123.52, stating, "[t]he only right-to-participate question that is appealable is whether an employee's injury, disease, or death occurred in the course of and arising out of his or her employment." Id. at 279. The court further stated: "Thus, under our most recent precedent, any issue other than whether the injury, disease, or death resulted from employment does not constitute a right-to-participate issue." Id. at 280. The court concluded, "we refuse to obscure the rule that R.C. 4123.512 permits only those appeals that concern whether the employee's injury, disease, or death occurred in the course of and arising out of his or her employment." Id. at 281.
 {¶ 18} In State ex rel. Walls v. Indus. Comm. (2000),90 Ohio St.3d 192, 2000-Ohio-51, the commission, pursuant to R.C. 4123.522, granted the employer permission to file a late appeal of an order allowing the claimant workers' compensation benefits. The claimant challenged the R.C. 4123.522 relief via a mandamus action. This court denied the writ after finding that the claimant had an adequate remedy at law via appeal to a *Page 8 
court of common pleas of the eventual order denying the claim. The Supreme Court of Ohio held that the challenge to the commission's grant of relief pursuant to R.C. 4123.522 is not appealable and is, thus, properly challenged via a writ of mandamus. Id. at 195. The court elaborated:
 "A `claim' in a workers' compensation case is the basic or underlying request by an employee to participate in the compensation system because of a specific work-related injury or disease. A decision by the commission determines the employee's right to participate if it finalizes the allowance or disallowance of an employee's `claim.' [Therefore, the] only action by the commission that is appealable under R.C. 4123.519
[now 4123.512] is this essential decision to grant, to deny, or to terminate the employee's participation or continued participation in the system." [Felty v. AT T Technologies, Inc.
(1992), 65 Ohio St.3d 234, 602 N.E.2d 1141] at 239, 602 N.E.2d at 1145.
 An objection to R.C. 4123.522 relief does not fit this criterion.
* * * Id.
 {¶ 19} Similarly, relator's challenge to the commission's failure to follow the statutory process of R.C. 4123.511 does not fit the criterion for appeal under R.C. 4123.512 as established by Afrates, Felty,Liposchak and Walls. Relator's challenge does not concern the essential decision to grant claimant's participation in the workers' compensation system.
 {¶ 20} Further, Elyria Foundry is distinguishable from the instant case. Therein, the commission, using the lawful hearing process, entered a final order that both allowed a claim and awarded temporary total disability ("TTD") compensation. The employer appealed the allowance of the claim to the common pleas court and challenged the TTD compensation award in a mandamus action. The Supreme Court of Ohio held that the mandamus challenge to the compensation decision was premature because the issue of *Page 9 
the allowance of the entire claim was pending in the court action. Id. at 89. Had the court appeal proved successful, the commission's award of compensation would be negated.
 {¶ 21} It is well-settled that mandamus will lie to compel the commission to perform a statutory duty. State ex rel. Coen v. Indus.Comm. (1933), 126 Ohio St. 550, syllabus. Here, relator alleges that the commission violated the "two-step" hearing process prescribed by R.C.4123.511 and seeks a writ of mandamus to compel the commission to comply with that duty. As relator argues, the violation of its right (if there is one), to the statutory hearing process is full, complete and final. The fact that relator may initiate a civil action related to the substance of the commission's final decision does nothing to vindicate its right to have the commission observe the statutory process in the adjudication of the claim. Elyria Foundry concerns the interplay between a court appeal on the substance of an allowance decision and a mandamus challenge to the substance of a compensation award. Here, relator challenges the legality of the administrative process employed by the commission; such is not the issue in Elyria Foundry. In short,Elyria Foundry does not apply because it does not concern a party's right to statutory process.
 {¶ 22} Relator also offers this court's decision in State ex rel.Wells v. Indus. Comm., Franklin App. No. 04AP-758, 2006-Ohio-2738, in support of its position that its mandamus action should not be dismissed. In Wells, the claimant filed both an R.C. 4123.512
right-to-participate action in the common pleas court, as well as a mandamus action in this court challenging the procedure used by the commission in rendering its decision on allowance. Id. at ¶ 11. This court considered the mandamus action aimed at the commission's procedure, even though the substance of the order was appealable to *Page 10 
the common pleas court. This court concluded that the procedural issue was not one that "could be properly raised before the court of common pleas in the right-to-participate action[.]" Id. at ¶ 11. In so concluding, we noted the purpose of a right-to-participate action under R.C. 4123.512:
 * * * [I]n an appeal, pursuant to R.C. 4123.512, the issues to be addressed by the [court of common pleas] would be those relating to the presence of a medical condition and whether or not it was a work-related injury, and the [court of common pleas] would not address and could not correct an improper exercise of jurisdiction by the commission granting reconsideration pursuant to R.C. 4123.52. * * *
Id., citing State ex rel. Forrest v. Anchor Hocking Consumer Glass, Franklin App. No. 03AP-190, 2003-Ohio-6077, at ¶ 6.
 {¶ 23} We determined that the claimant's common pleas court action was "not an adequate remedy to address the isolated issue of the commission's exercise of continuing jurisdiction[,]" the procedural point at issue. Wells, at ¶ 11. We concluded that this procedural issue did not "fall under the penumbra of a right-to-participate action." Id. Because the procedural issue could not be challenged in the claimant's common pleas court action, we concluded that the magistrate "correctly declined to dismiss the present mandamus action." Id.
 {¶ 24} Applying the Supreme Court of Ohio's decisions in Afrates,Felty, Liposchak and Walls and this court's decision in Wells, we concur in relator's position that mandamus is the proper means by which to challenge the administrative procedure employed by the commission in the instant case.
 {¶ 25} Having so determined, we now address relator's objection to the substance of the magistrate's decision. The magistrate rejected relator's contention that it had a *Page 11 
clear legal right under R.C. 4123.511 to both district and staff hearings "on the merits" of the claim allowance. The magistrate noted that no case law directly addresses the matter at issue; however, the magistrate found the Supreme Court of Ohio's decision in State ex rel.Jones v. Indus. Comm. (1996), 76 Ohio St.3d 503, to be instructive. As noted by the magistrate, the Jones court applied a decision from this court in State ex rel. Webb v. Indus. Comm. (Sept. 26, 1989), Franklin App. No. 88AP-429, stating:
 * * * The claimant in Webb maintained, as Jones does here, that new evidence of disqualifying factors must be submitted first to a DHO, who possesses original jurisdiction in "contested claims matters' involving TTD under R.C. 4121.34(B). The Webb court disagreed, holding that the [Dayton Regional Board of Review] had jurisdiction to review all aspects of a claimant's TTD eligibility, including evidence that the claimant's condition had become permanent, notwithstanding that the issue of permanency or maximum medical improvement ("MMI") had not been determined initially by the DHO. * * *
 In effect, Webb reasoned that "contested claims matters," as used in former R.C. 412134.(B)(2) (now R.C. 4121.34[B][3]), granted DHOs authority to resolve the claimant's overall TTD eligibility, which depends on whether the claimant qualified initially for benefits and continues to be qualified. * * * The Webb court concluded that where the claimant seeks TTD, the "contested matter" is the challenged allowance of the entire claim, not the various considerations, such as permanency, that may factor into this determination. The DHO in Webb had already exercised original jurisdiction in initially awarding TTD. Thus, the court concluded hat the administrative appeal necessarily placed before the [Dayton regional Board of Review] developments occurring since the DHO's order that could disqualify the claimant from receiving TTD.
Jones, at 505-506.
 {¶ 26} The magistrate first observed that R.C. 4123.511 does not utilize the term "on the merits" with respect to the hearing procedures set forth therein and that relator *Page 12 
had neither defined the term nor cited any authority which provided the meaning of the term. The magistrate further noted that R.C.4121.34(B)(3) confers original jurisdiction on DHOs in "[a]ll other contested claims matters * * * except those over which [SHOs] have original jurisdiction." Appendix at ¶ 64.
 {¶ 27} The magistrate concluded that the commission complied with the procedures set forth in both R.C. 4121.34 and 4123.511. More particularly, the magistrate noted that following claimant's December 22, 2004 FROI-1 filing, a DHO assumed original jurisdiction over the contested claim in accordance with R.C. 4121.34(B)(3). The DHO heard the matter in accordance with R.C. 4123.511(C) and denied the claim. Thereafter, the matter proceeded to an SHO in accordance with R.C.4123.511(D). The SHO issued an interlocutory order, which determined that claimant had satisfied the prerequisites of R96-1-01 and ordered the claimant to be examined by a pulmonary specialist. Upon receipt of the results of that examination, along with other medical evidence, the SHO allowed the claim.
 {¶ 28} The magistrate concluded that R.C. 4123.511 did not require the commission to refer the matter to a DHO after the SHO issued the interlocutory order because the issues regarding the contested allowance had changed, that is, the preliminary issue of compliance with R96-1-01 had been resolved and there was additional evidence regarding the claim. Accordingly, the magistrate recommended that this court deny the requested writ of mandamus.
 {¶ 29} Relator's objection essentially reargues the issue presented to the magistrate. Indeed, relator reiterates its position that R.C.4123.511 requires two separate and de novo hearings, the first at the district level and the second at the staff *Page 13 
level, before a final order issues on a disputed claim allowance. Relator contends the DHO's dismissal of the FROI-1 for failure to comply with the prerequisites in R96-1-01 and R03-1-02 did not constitute a "decision" as contemplated by R.C. 4123.511(C). Relator maintains that the "decision" required by a DHO pursuant to R.C. 4123.511(C) means a decision as to allowance or disallowance of the claim. Relator argues that in the instant case, the one and only decision "on the merits," i.e., whether the claim should be allowed or disallowed, was rendered at the appellate staff level, as a matter of first instance, which is a violation of Ohio's statutory hearing process.
 {¶ 30} Although neither case is precisely on point, Webb andJones instruct that, where a DHO has already exercised original jurisdiction in a contested-claims matter, the administrative appeal necessarily places before the SHO developments occurring since the DHO issued his or her order. In this case, after claimant filed the December 22, 2004 FROI-1, the DHO assumed original jurisdiction over the contested claim pursuant to R.C. 4121.34(B)(3). The DHO issued an order dismissing that claim. On appeal, the SHO disagreed with the DHO's order and determined that claimant had complied with R96-1-01 and R03-2-01; accordingly, the preliminary issue of compliance with the commission's resolution had been resolved. Thereafter, the SHO referred the matter for examination by a pulmonary specialist in accordance with R.C.4123.68. The results of that examination were submitted to an SHO, who heard the matter and allowed the claim. As in Webb and Jones, claimant's administrative appeal of the DHO's order dismissing his claim necessarily placed before the SHO developments, i.e., the pulmonary specialist's report, occurring since the DHO issued his order. *Page 14 
 {¶ 31} In short, we agree with the magistrate's conclusion that R.C.4123.511 does not require the procedure demanded by relator. Accordingly, we overrule relator's objection to the magistrate's decision.
 {¶ 32} For the foregoing reasons, we adopt the magistrate's decision as our own, including his findings of fact and conclusions of law, and deny the requested writ of mandamus.
Objection overruled; writ denied.
 PETREE and FRENCH, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 15 
 APPENDIX A MAGISTRATE'S DECISION Rendered on November 22, 2006 IN MANDAMUS {¶ 33} In this original action, relator, Wheeling-Pittsburgh Steel Corp., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the November 22, 2005 order of its staff hearing officer allowing the industrial claim of respondent Carl Filler ("claimant") for "occupational asthma and chronic *Page 16 
obstructive pulmonary disease," and to schedule a hearing on the allowance of the claim before a district hearing officer.
Findings of Fact: {¶ 34} 1. Effective February 26, 1996, the commission enacted resolution R96-1-01 which declares:
 THEREFORE BE IT RESOLVED that it is the policy of the Industrial Commission that at a minimum the following evidence is necessary to be submitted by the claimant prior to the referral of the claim to the Administrator for an examination by a qualified medical specialist pursuant to the provisions of Section 4123.68 concerning claims for occupational diseases of the respiratory tract resulting from injurious exposure to dust.
 • A written interpretation of x-rays by a certified "B reader."
 • Pulmonary functions studies and interpretation by a licensed physician.
 • An opinion of causal relationship by a licensed physician.
(Emphasis sic.)
 {¶ 35} 2. Effective March 5, 2003, the commission enacted resolution R03-1-02 which declares:
 THEREFORE BE IT RESOLVED that Resolution R96-1-01 be modified to the extent that it is the policy of the Commission that, at a minimum, the following evidence is necessary to be submitted by the injured worker prior to the referral of the claim to the Administrator for an examination by a qualified medical specialist pursuant to the provisions of Section 4123.68 of the Ohio Revised Code concerning claims for asbestosis, as well as for claims for sillcosis, coal miners pneumoconiosis, and for occupational diseases of the respiratory tract resulting from injurious exposure to dust, and at a minimum, the following evidence is also necessary to be submitted by an injured worker prior to the adjudication *Page 17 
of a contested claim filed for any asbestos-related occupational disease, other than mesothelioma:
 • A written interpretation of x-rays by a certified "B reader."
 • Pulmonary functions studies and interpretation by a licensed physician.
 • An opinion of causal relationship by a licensed physician.
(Emphasis sic.)
 {¶ 36} 3. On May 22, 2003, claimant filed an industrial claim on a form captioned First Report of an Injury, Occupational Disease or Death ("FROI-1"). Therein, claimant alleged that he developed chronic obstructive pulmonary disease and chronic bronchitis as a result of his employment with relator, a self-insured employer under Ohio's workers' compensation laws.
 {¶ 37} 4. Following a June 30, 2003 hearing, a district hearing officer ("DHO") issued an order denying the May 22, 2003 industrial claim on grounds that claimant had failed to meet the requirements of commission resolution R96-1-01.
 {¶ 38} 5. Claimant administratively appealed the June 30, 2003 DHO's order.
 {¶ 39} 6. Following an August 5, 2003 hearing, a staff hearing officer ("SHO") issued a so-called interlocutory order that ordered the Ohio Bureau of Workers' Compensation ("bureau") to ascertain whether the report of Dr. Kochhar is compliant with commission resolutions R96-1-01 and R03-1-02 and to arrange a pulmonary examination in that event. The SHO's order further provided that upon completion of the examination, the matter was to be reset before a DHO.
 {¶ 40} 7. Apparently, the bureau did not schedule a pulmonary examination pursuant to the August 5, 2003 SHO's order. *Page 18 
 {¶ 41} 8. The matter of claimant's May 22, 2003 industrial claim was scheduled for hearing on September 16, 2003, before a DHO.
 {¶ 42} 9. Following the September 16, 2003 hearing, the DHO determined that the SHO's order of August 5, 2003, had improperly remanded the matter to the DHO's docket. Accordingly, the DHO issued an order declaring that he had heard the matter as an SHO rather than a DHO. The order of September 16, 2003, dismissed the May 22, 2003 industrial claim on grounds that claimant had failed to meet the requirements of commission resolution R96-1-01.
 {¶ 43} 10. Apparently, by letter dated November 11, 2003, claimant's counsel requested that the May 22, 2003 industrial claim (FROI-1) be processed because the prerequisites had now been allegedly met. Apparently, the May 22, 2003 FROI-1 was then refiled.
 {¶ 44} 11. Following a January 22, 2004 hearing, a DHO issued an order that dismissed the refiled FROI-1.
 {¶ 45} 12. Claimant administratively appealed the DHO's order of January 22, 2004.
 {¶ 46} 13. Following a March 9, 2004 hearing, an SHO mailed an order on March 13, 2004, vacating the January 22, 2004 DHO's order. The SHO's order of March 9, 2004, holds that the DHO of January 22, 2004, had no jurisdiction to rule on the refiled FROI-1, because the May 22, 2003 FROI-1 had previously been dismissed by the DHO/SHO's order of September 16, 2003.
 {¶ 47} 14. On December 22, 2004, claimant filed another FROI-1 alleging essentially the same matters contained in his original FROI-1 filed May 22, 2003. *Page 19 
 {¶ 48} 15. Following a July 19, 2005 hearing, a DHO issued an order that dismisses the FROI-1 filed December 22, 2004, on grounds that claimant has failed to meet the prerequisites of commission resolution R96-1-01.
 {¶ 49} 16. On August 5, 2005, claimant filed an appeal from the DHO's order of July 19, 2005.
 {¶ 50} 17. Following an August 30, 2005 hearing, an SHO mailed a so-called interlocutory order stating:
 The claim is referred to the Administrator to arrange for an examination of the claimant by a qualified specialist pursuant to the provisions of ORC 4123.68 concerning claims for occupational diseases of the respiratory tract resulting from continuance [sic] exposure to dust.
 The claimant has met the minimal provisions for such a referral. * * *
 {¶ 51} 18. On October 7, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 30, 2005.
 {¶ 52} 19. Pursuant to the SHO's order of August 30, 2005, claimant was examined on October 11, 2005, by Robert DeMarco, M.D., who issued a report of his findings.
 {¶ 53} 20. Following the issuance of Dr. DeMarco's report, a hearing was scheduled before an SHO on November 22, 2005. Following the November 22, 2005 hearing, the SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 01/22/2004 [sic], is VACATED. Therefore, the Appeal, filed 02/10/2004 [sic], is GRANTED TO THE EXTENT OF THIS ORDER.
 Therefore, the FROI-1, filed 05/22/2003 [sic], is GRANTED TO THE EXTENT OF THIS ORDER. *Page 20 
 Based upon claimant's testimony as to his working conditions during the past 12 years, and upon the 03/23/2000 report of Dr. Kochkar [sic], the 03/22/2004 report of Dr. Sanchez, the 04/08/2003 report of Dr. Kuruc, and the 10/11/2005 report of BWC Dr. DeMarho [sic], the claim is allowed for OCCUPATIONAL ASTHMA and CHRONIC OBSTRUCTIVE PULMONARY DISEASE.
(Emphasis sic.)
 {¶ 54} 21. On November 30, 2005, relator filed an appeal from the SHO's order of November 22, 2005, that allowed the industrial claim.
 {¶ 55} 22. On December 8, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 22, 2005.
 {¶ 56} 23. On January 27, 2006, pursuant to R.C. 4123.512, relator filed in the Jefferson County Court of Common Pleas a notice of appeal from the SHO's order of November 22, 2005 (mailed November 26, 2005), from which the commission refused to hear an appeal by order mailed December 8, 2005.
 {¶ 57} 24. On February 24, 2006, relator, Wheeling-Pittsburgh Steel Corp., filed this mandamus action.
Conclusions of Law: {¶ 58} According to relator, the procedure employed by the commission denied it a right to a district level hearing "on the merits" of the claim allowance. Relator claims that R.C. 4123.511 required the commission to conduct hearings "on the merits" at both the district and staff levels regarding the allowance of the claim. Because relator was allegedly not provided this "two-step" procedure, relator contends that this court must issue a writ of mandamus. *Page 21 
 {¶ 59} Because the magistrate finds that relator was not denied a clear legal right under R.C. 4123.511's appeal procedures, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 60} At the outset, the magistrate notes that the SHO's order of November 22, 2005 contains an error as to which DHO's order is being vacated and correspondingly which appeal is being granted. Clearly, the only DHO's order over which the SHO had appellate jurisdiction at the November 22, 2005 hearing was the DHO's order of July 19, 2005. Correspondingly, the SHO actually heard the appeal filed by claimant on August 5, 2005. Moreover, it was the FROI-1 filed on December 22, 2004, that was contested at the July 19, 2005 DHO's hearing.
 {¶ 61} Relator points out the errors in the SHO's order of November 22, 2005, when it states:
 Although the order claims on its face to be a decision on the appeal of the district level order of January 22, 2004, it could not possibly have been such, as that district level order had already been vacated by a final staff level order mailed March 13, 2004. * * *
(Relator's brief, at 7.) However, relator does not claim here that the above-noted errors in the SHO's order of November 22, 2005 compel the issuance of a writ of mandamus. However, relator does claim that the commission failed to follow procedure mandated by R.C. 4123.511.
 {¶ 62} R.C. 4123.511(C) provides that "in the case of other contested claims other than state fund claims, the commission shall refer the claim to an appropriate district hearing officer." R.C. 4123.511(C) further provides that "[t]he district hearing officer shall hold a hearing on a disputed issue or claim * * * and issue a decision." *Page 22 
 {¶ 63} R.C. 4123.511(D) provides that "[u]pon the timely filing of an appeal of the order of the district hearing officer[,] * * * the commission shall refer the claim file to an appropriate staff hearing officer." R.C. 4123.511(D) further provides that "[t]he staff hearing officer shall hold a hearing * * * and issue a decision."
 {¶ 64} R.C. 4123.511(E) provides that "[u]pon the filing of a timely appeal of the order of the staff hearing officer, * * * the commission or a designated staff hearing officer * * * shall determine whether the commission will hear the appeal."
 {¶ 65} R.C. 4121.34(B)(3) provides that DHOs shall have original jurisdiction over "[a]ll other contested claims matters * * * except those matters over which staff hearing officers have original jurisdiction."
 {¶ 66} Unfortunately, there is no case that is directly on point. However, State ex rel. Jones v. Indus. Comm. (1996), 76 Ohio St.3d 503, is instructive. In Jones, the court had occasion to apply a decision from this court in State ex rel. Webb v. Indus. Comm. (1989), Franklin App. No. 88AP-429. The Jones court explains this court's decision inWebb as follows:
 * * * The claimant in Webb maintained, as Jones does here, that new evidence of disqualifying factors must be submitted first to a DHO, who possesses original jurisdiction in "contested claims matters" involving TTD under R.C. 4121.34(B). The Webb court disagreed, holding that the [Dayton Regional Board of Review] had jurisdiction to review all aspects of a claimant's TTD eligibility, including evidence that the claimant's condition had become permanent, notwithstanding that the issue of permanency or maximum medical improvement ("MMI") had not been determined initially by the DHO. * * *
 In effect, Webb reasoned that "contested claims matters," as used in former R.C. 4121.34(B)(2) (now R.C. 4121.34[B][3]), granted DHO's authority to resolve the claimant's overall TTD eligibility, which depends on whether the claimant *Page 23 
qualified initially for benefits and continues to be qualified. Accord State ex rel. Jeep Corp. v. Indus. Comm. (1991), 62 Ohio St.3d 64, 66 * * * (claimant's right to continued compensation contingent on successive medical reports that claimant has burden to produce). The Webb court concluded that where the claimant seeks TTD, the "contested matter" is the challenged allowance of the entire claim, not the various considerations, such as permanency, that may factor into this determination. The DHO in Webb had already exercised original jurisdiction in initially awarding TTD. Thus, the court concluded that the administrative appeal necessarily placed before the [Dayton Regional Board of Review] developments occurring since the DHO's order that could disqualify the claimant from receiving TTD.
 We agree with the court's analysis in Webb[.] * * *
(Emphasis sic.) Id. at 505-506.
 {¶ 67} In effect, relator claims that after claimant was examined by Dr. DeMarco pursuant to the SHO's interlocutory order of August 30, 2005, the matter of the contested claim allowance was required to be heard by a DHO rather than the SHO who heard the matter on November 22, 2005. Relator would characterize such a hearing before a DHO as "on the merits." Thus, relator claims that it had a clear legal right under R.C.4123.511 to two hearings "on the merits" of the claim allowance — one before a DHO and the second before an SHO.
 {¶ 68} Analysis of relator's arguments begins with the observation that R.C. 4123.511 does not employ the term "on the merits" with respect to the hearing procedures set forth there. Moreover, relator has not defined the term "on the merits," nor cited to any authority defining such term.
 {¶ 69} Here, following claimant's December 22, 2004 filing of another FROI-1, a DHO assumed original jurisdiction over the contested claim when the matter was heard *Page 24 
on July 19, 2005, and an order was thereafter issued. Thus, the commission complied with R.C. 4121.34.
 {¶ 70} Claimant administratively appealed the DHO's order of July 19, 2005 and, pursuant to R.C. 4123.511(D), the matter was referred to an SHO who issued an interlocutory order following an August 30, 2005 hearing.
 {¶ 71} Following Dr. DeMarco's examination and report, the matter was again referred to an SHO who heard the matter on November 22, 2005, and thereafter issued an order allowing the claim.
 {¶ 72} Undisputedly, there was additional medical evidence before the SHO on November 22, 2005 and, by then, the preliminary issue of compliance with the commission's resolutions had been resolved by the SHO's interlocutory order.
 {¶ 73} However, that the issues regarding the contested claim allowance had changed after the SHO's interlocutory order and Dr. DeMarco's examination did not require the commission to refer the matter to a DHO. Nothing in R.C. 4123.511 requires the procedure that relator demands here.
 {¶ 74} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1